· JOHN T. ARMOR *v.* BANK OF LOUDON.

1. BUILDING AND LOAN ASSOCIATIONS. *Usury.*

> Where the subscription for stock in a building and loan association ·
> was not an investment, but a part of a scheme to secure a loan,
> and the monthly payments on the stock for interest, dues, and
> premiums amounted to more than ten per centum, the highest
> legal contractual rate, the loan was usurious.

2. SAME. *Giving new notes.* *Innocent holder.*

> The giving of new notes for the balance appearing to be due on
> old and usurious ones does not purge the usury, although the
> new notes be made payable to a volunteer third person and be
> transferred by said person to an innocent party.

3. SAME. *Payment of principal. Cancellation of securities. Code* 1892,
> § 2348.

> Under Code 1892, § 2348, providing that, if a greater rate of interest
> than ten per centum shall be stipulated for or received, all in-
> terest shall be forfeited and may be recovered back, whether
> the contract be executed or ·executory, a complainant, having
> paid the principal of an usurious debt, is entitled to the can-
> cellation of a deed of trust given for its security, even as against
> an innocent holder of the notes, evidencing the debt, and the
> deed.

FROM the chancery court of Union county.

HON. HENRY L. MULDROW, Chancellor.

Armor, the appellant, was complainant, and the Bank of
Loudon (Tennessee), the appellee, was defendant in the court
below. From a decree in defendant's favor the complainant
appealed to the supreme court.

In May, 1898, Armor, the appellant, a citizen of Mississippi,
subscribed for five shares of stock in the Atlas Savings & Loan
Association, a corporation domiciled at Chattanooga, Tennessee.
After paying· $3 per month for four months as stock dues, he
borrowed from the association the sum of $500 in September,
1898. To secure this loan he gave a deed of trust on his home-

stead, and deposited his five shares of stock as collateral security therefor.    After getting the loan he paid each month $3 as dues, $2.50 as interest, and $1.65 as premium.    In 1902 the stockholders of the Atlas Savings & Loan Association decided to go into liquidation, and appointed the Citizens' Bank & Trust Company as trustee to wind up its affairs.    C. P. Kendall was employed by this trustee to visit the borrowing members and close up the loans.    He called on Armor, the appellant, and after consultation it was decided that Armor owed $375 on the loan.    In settlement Armor gave his four notes— one for $75 and three for $100 each—payable in one, two, three, and four years from date, and secured same by giving a deed of trust on some land, different from that on which he had given a deed of trust in the first instance.    These notes were made payable to one Jacob B. F. Lowery, and the deed of trust securing them recited that the notes were for money borrowed from Lowery to pay Armor's indebtedness to the Atlas Savings & Loan Association.    Lowery afterwards transferred these notes to the Bank of Loudon.    After paying two of the notes, Armor filed the bill in this case against the Bank of Loudon, asking that the original contract between himself and the Atlas Savings & Loan Association be declared usurious, and that the notes held by the bank be declared void, and the deed of trust given to secure them be canceled as a cloud upon his title to the land.    The Bank of Loudon, in its answer, asserted that the original contract was not usurious, and that the notes were given to Lowery for money with which to pay off complainant's indebtedness to the Atlas Savings & Loan Association, which association never had any interest in them, and that they were purchased by the defendant in good faith, for a valuable consideration.

*C. Lee Crum,* for appellant.

The proof shows that the building and loan association did its business through local boards, and is therefore subject to the

laws of Mississippi against usury, regardless of the fact that the contract provides that the payments may be made in Chattanooga, Tennessee. *Shannon* v. *Ass'n,* 78 Miss., 955.

The Bank of New Albany, Mississippi, was the local agent of the association authorized to collect the monthly payments, which of itself renders the contract subject to the laws of this state against usury. *Ass'n* v. *Wilson* (Miss.), 30 South. Rep., 56.

Code 1892, § 2348, authorizes as much as 10 per cent interest to be paid when contracted for in writing, but prohibits more than that rate to be stipulated for or received, except from building and loan associations domiciled within this state, doing business with their own members. It is axiomatic, then, that if the Atlas in this case stipulated for or received more than ten per cent interest from Armor, the contract was usurious, without regard to whether the charge was termed interest or something else.

It is further the contention of appellant that the sums of money denominated dues on stock, premiums on stock, and interest on loan should be applied to the loan according to the rule of partial payments. This is not the rule in settling the business of insolvent associations, but where a solvent association goes into voluntary liquidation, as in the case at bar, it is contended that this is the proper and equitable rule.

In the court below counsel emphasized and relied with great confidence on the rule of this court announced in McPhillamy's case, reported in 81 Miss., 61. The exceptionally able opinion rendered in that case by Whitfield, C. J., affords authority for the contention as above stated, and not against it. This case is not, however, analogous to the one at bar in these respects: In the McPhillamy case the association was local, domiciled within this state, and insolvent, and the question of usury did not arise. The suit was one of accounting between an insolvent association and one of its borrowing stockholders. In the case at bar the question of usury is the main issue, and

the question of accounting between a solvent foreign building and loan association that went into voluntary liquidation and a borrowing member.   7 Thompson on Corporations, sec. 8796.

It does seem that equity and good conscience direct that Armor should have credit on his loan as of the dates of the payment of these dues, because the stock of the association was at a premium at the date of its liquidation, and he is not asking to share in the dividends.

This seems to have been the idea of this court in its opinion in the *Sokoloski Case,* 77 Miss., 155.

The case of *Tony* v. *Ass'n,* 78 Miss., 916, is exactly like this case and supports appellant's contention as to the application of the dues.

In Sokoloski's case, *supra,* this court held that a foreign building and loan association had no authority under the statute to charge or receive more than ten per cent interest per year, no matter by what device it was undertaken, and that to approve such contract was contrary to public policy. In the light of the decisions of this court a foreign building and loan association cannot legally stipulate with a borrower that he must pay certain fixed monthly sums and not receive the benefit thereof as credits until the sum of these payments aggregates an amount equal to the sum loaned, so that the borrower shall pay the last month before maturity interest on the entire sum loaned, when all but one one-hundred-and-sixty-sixth part of the loan had been repaid.

Divested of all high-sounding terms, this is exactly what the Atlas did in its contract with Armor.   To call the three dollars paid monthly dues on stock is only an ingenious effort to sugarcoat a fraudulent scheme to charge usury in such a way that the real substance cannot be detected when the courts are dieted thereon.

It has been held in a number of cases in Mississippi that courts of equity will grant relief against paying usury.   *Purvis* v. *Woodard,* 78 Miss., 922 (s.c., 29 South. Rep., 917).

The anti-commercial statute, Code 1892, § 3503, authorizes this plea of usury to be set up in this way.

- *Stephens & Stephens,* for appellee.

The contract in question was not usurions; in fact, Armor paid as interest on his loan only a fraction over nine per cent.

· The whole question of usury in this case hinges on the application of the payments made as payments of dues on the shares of stock. This being true, it is proper to keep in mind the nature and object of building and loan associations, the purpose of the payment of dues, the relation of the borrowing member to the association, etc. The Atlas is a true building and loan association.

Dues are payments to be made by a member of the association on the shares of stock that he owns.

"Stock payments,. or dues, may be defined as the fixed periodical contributions upon each share of stock held, which, by virtue of the original undertaking of membership in the society, the holder thereof is liable to pay." 2 Am. & Eng. Ency. Law (1st ed.), 618.

The object of paying dues is to provide a fund from which to make loans, defray expenses, etc. The borrowing and non-borrowing members each pay the same amout of dues, which, in this case, is sixty cents per share; and each pays for the same purpose. The fact that one borrows money from the association and the other does not cannot affect the object for which dues are paid. Their relation to the association, so far as the payment of dues is concerned, is the same.

That the relation existing between the stockholder and the association is unchanged, so far as membership and the duty to pay dues are concerned, by the stockholder becoming a borrower, we cite and quote the following authorities:

"A borrowing member of a building and loan association occupies a dual relation to the association. In his capacity as stockholder he is a member of the association; in his capacity.

as a borrower he is a debtor. What he pays as stock dues is paid in his character as a stockholder; what he pays as interest is paid in his character as a debtor on his loan. The two are separate and distinct, and must be so dealt with." *McPhillamy* v. *Association,* 81 Miss., 61.

"Besides being still a member after such borrowing, the party occupies the twofold character of debtor and stockholder; and his payments on stock are payments on stock, and his payments on debts are payments on debts, so intended in both cases. He has no right to apply his stock payments on his indebtedness. What he has paid in dues must go on his stock, to constitute the capital stock, as he contracted to pay such dues on his shares of stock, not on his debt. Here he is a stockholder, not a debtor. His contract of subscription is for stock, and his dues go on that by contract." *Young* v. *Ass'n,* 48 W. Va., 514.

"The borrower's standing as a member of the association is not merged in his superadded character of debtor." Endlich on Building Associations (2d ed.), 477.

"Dues paid in during the running of the stock, according to the regulations of the association, are not, *ipso facto,* payments on account of the loan or mortgage debt, and the borrower is not entitled to have them applied to the reduction thereof." *Sullivan* v. *Stucky,* 86 Fed. Rep., 491.

"Payments on stock should not be applied to the reduction of the debt." *El Paso B. & L. Ass'n* v. *Lane,* 81 Tex., 6.

"Nor can it be claimed that an unvarying amount of interest for the period of time the loan is to continue is usurious, on the ground that the payments on the stock are constantly reducing the amount the borrower will ultimately have to pay; for a payment of dues on the stock has nothing to do with the payment of interest." *Thornton* v. *Building Association,* 207.

The only cases, so far as we can find, that hold either that monthly dues should be credited as payments on the loan as

of the date of their payment, or that dues should be counted as payments of interest on the loan, are of two classes:

First—Those that proceed upon the theory that the assignment of stock as collateral security for the loan puts an end, at once, to the relation of membership in the association, and that the borrowing member and the association thenceforth occupy toward each other simply the relation of debtor and creditor.

Second—In those cases where the contract, from its very inception, was usurious, or more than the legal rate of interest was stipulated for in the contract.

Neither of these two classes of cases affects our case, because, as we have seen from the authorities cited, the fact that a stockholder borrows from the association does not change his relation as such stockholder, and because the rate of interest charged Armor, including premium, was less than ten per cent.

Our case is very different from the cases relied on by counsel for appellant. In the *Sokoloski Case,* 77 Miss., 155; *Tony Case,* 78 Miss., 916; *Shannon Case,* 78 Miss., 955; *Pinkston Case,* 79 Miss., 468; and others, there was more than ten per cent interest stipulated for and charged. This is true when the amounts charged as interest and premium are added; and they must be added, for under the holding of our court the amounts paid as premium are to be included as interest payments.

Our deductions from the authorities are that when a member of a building and loan association borrows money from the association and assigns his shares of stock as collateral security for the loan, his relation to the association, so far as it relates to his shares of stock, is unchanged—that is, he is still a member of the association, and, as such, liable for dues. The dues he pays are to be applied to his stock, and not on his debt; neither are dues to be counted as interest payments.

The amount on which he pays interest remains the same during the entire period the contract of loan exists, except when

payments are made specifically on the indebtedness; and when the association goes into liquidation, from any cause whatever, the rule of settlement is to charge the debtor with the amount of his loan, plus interest at the legal rate, and credit him with the ultimate value of his stock, thereby giving him the benefit of his payments on stock.

If we are correct in our conclusions, as stated above, it is clear that the appellant is not entitled to the relief prayed for in his original bill, and that the decree of the chancellor should be affirmed.

We think we have made it clear that there was no usury in the original contract between Armor and the association; but admitting that it was usurious, this cannot affect the rights of Lowery or his assignee, the Bank of Loudon, because such usurious taint in the original indebtedness was purged of the usury by novation through the substitution of a new creditor.

It is well settled that where a third party, at the request of a debtor in a usurious contract, pays or lends him money to pay such indebtedness, the defense of usury cannot be set up against the liability of the debtor to reimburse such third person.

Argued orally by *C. Lee Crum,* for appellant, and by *H. D. Stephens,* for the appellee.

Cox, J., delivered the opinion of the court.

Under the contract by which appellant secured from the Atlas Savings & Loan Association the loan of $500 he was to pay monthly as premium the sum of $1.65, and as interest the sum of $2.50. The aggregate sum of $4.15—which, under the decisions of this court, must be treated as interest—was less than the interest at ten per cent, the maximum legal rate, by so small an amount that the first monthly payment of $3, provided for as payment on stock, if credited on the loan, would raise the interest rate above ten per cent. It is averred in the bill

that the subscription for stock, the contemporaneous application for the loan, the execution of the contract and deed of trust, and the depositing of certificates of stock as collateral, were all parts of the same scheme to negotiate and secure the loan. This averment is not denied, and must therefore be treated as confessed. Section 4 of art. 9 of by-laws of the Atlas Savings & Loan Association, with reference to which the loan was made and the securities taken, provided that: "Every member who procures a loan shall secure the payment by an acceptable deed of trust, mortgage, or deed on real estate, the conservative value of which must be at least twice the amount wanted, and this deed of trust, mortgage, or deed shall remain in force till the monthly dues applied to the general fund, dividends, and reserve apportioned make up the sum of one hundred dollars on each share drawn. The deed of trust, mortgage, or deed shall then be canceled, and such member shall cease, with regard to his incumbered shares, to be a member." The confessed averments of the bill, taken in consideration with the section from the by-laws above quoted, make it clear that in the instant case the taking of stock was merely a condition to the getting of the loan; that appellant was in reality never to acquire any stock, but that the payment in full for the stock was *ipso facto* to pay the loan and cancel the stock. This is nothing but a scheme to evade the law against usury, and we are therefore constrained to differ with the opinion of the learned chancellor that the contract was not usurious. *Inge* v. *Interstate Building & Loan Association,* 79 Miss., 18 (29 South. Rep., 998). It is evident from the averments of the bill and the express and tacit admission of the answer, as well as from the evidence in the case, that complainant never in fact borrowed money from Lowery to pay off and discharge his indebtedness to the Atlas Association, and, indeed, that he had no dealings with Lowery of any kind. Kendall, as agent for the receiver, and in pursuance of the plan adopted by the receiver and the stockholders of the Atlas Savings & Loan Association

to reduce all the assets of said association to cash as soon as possible, in liquidating the indebtedness of complainant, took four notes for $375 in the aggregate, payable to Lowery. This was a mere merger of indebtedness. The amount promised to be paid included usury. The new contract, taken in lieu of the old, was tainted with usury, and was therefore not enforceable for more than the principal unpaid of the original loan. Appellant, having repaid the original loan in full, is entitled to the cancellation of the trust deed, even as against an innocent holder of the notes and security. *Long* v. *McGregor,* 65 Miss., 70 (3 South. Rep., 240); *Building & Loan Ass'n* v. *Tony,* 78 Miss., 921 (29 South. Rep., 825); *Fraser* v. *The Bank,* 63 Miss., 231.

*Reversed and remanded.*