BANK OF LOUDON *v*. JOHN H. ARMOR.

[44 South., 66.]

BUILDING AND LOAN ASSOCIATIONS.  *Loans.  Accountings.  Stock dues. Usury.*

A true building and loan association, issuing stock to its members, and exacting stock dues in good faith and not as a cloak for usury, is not to be charged with payments made on such dues in an accounting with a borrowing member, where the inquiry is whether the loan to him was usurious.

FROM the chancery court of Union county.

HON. JOHN Q. ROBINS, Chancellor.

Armor, appellee, was complainant in the court below; the Bank of Loudon (Tennessee), appellant, was defendant there. From a decree favorable to complainant defendant appealed to the supreme court.

Armor, complainant and appellee, was a subscriber for the stock in a building and loan association known as the Atlas Savings & Loan Association, of Chattanooga, Tennessee, and he also borrowed money from the association, securing the loan by a trust deed on his homestead, and thereafter made divers payments on stock dues, etc., to the association.

The association went into liquidation and its affairs were placed in the hands of a trustee; the trustee called on Armor for a settlement or adjustment and Armor gave him four notes for the sum agreed to be due and secured these notes by a deed of trust on some lands in Mississippi. These notes were transferred and assigned by the payee in them to the Bank of Loudon, appellant, and two of them were paid to the bank by Armor, appellee.

Thereafter this suit was begun by appellee, praying that the original contract between himself and the building and loan association should be adjudged to have been usurious,

the notes held by the bank to have been paid and to be void, and the trust deed given to secure them, canceled as a cloud upon the title to the land.

The case was once before in the supreme court and is reported, *Armor* v. *Bank of Loudon,* 86 Miss., 658, s.c., 39 South., 17, where a full statement of the facts is given.

*Stephens & Stephens,* for appellant.

This case has been before this court on a former appeal; see 86 Miss., 658. After the case was reversed, leave was granted to amend the answer. This amendment presents an entirely different case to the one formerly passed on by this court.

The attorney who drew the original answer was not fully conversant with the facts; and in the answer certain admissions were made which, as is fully shown by the records, were not in accord with the true history of the case.

For instance, it was admitted in the original answer that the subscription for stock and the application for the loan were made at one and the same time. This is shown to be untrue. The amendment corrects this error.

Again, it was stated in the original answer that the four notes were taken payable to Lowrey to avoid a protracted liquidation. This was an error, as is fully shown by the deed in trust.

These two admissions very largely influenced this court in the rendition of its opinion on the first appeal.

The whole question of usury in this case hinges on the application of the payment of dues on the shares of stock. Each subscriber to stock in Class "C" was required to pay, as dues on the same, sixty cents per share. This is true whether the stockholder borrowed from the association or not. Armor paid $3 per month as dues on his stock.

The members of the association are divided into two classes: Borrowers and non-borrowers. It is immaterial whether a

stockholder remains an investor or becomes a borrower. He must pay dues, and the same amount of dues, in either capacity.

"The obligation to pay dues is contemporaneous with the membership in the society, arises from the inherent nature of the contract of membership, and ends only when the membership ceases to exist. The fact that a member has become a borrower in nowise affects his liability to pay dues." 2 Am. & Eng. Ency. L. (1st ed.), 618.

That the relation existing between the stockholder and the association, so far as membership and the obligation to pay dues are concerned, is unchanged by the stockholder becoming a borrower, we think is well settled.

We cite in support of this contention *McPhilamy* v. *Association,* 81 Miss., 61, s.c., 32 South., 1001; Endlich on Building Associations, sec. 477; *Young* v. *Association,* 47 W. Va., 514; 5 Am. & Eng. Decisions in Equity, 238.

These authorities recognize the "dual capacity" of the borrowing stockholder; that he still retains his membership in the association; and that he is still required to pay stock dues.

That stock dues are not to be credited on the debt, and that the payment of stock dues do not reduce the debt, but that the debt remains the same throughout the entire period through which it runs, we cite the following authorities: *Sullivan* v. *Stucky,* 86 Fed., 491; *El Paso Building Ass'n* v. *Lane,* 81 Tex., 6; *North American B. & L. Ass'n.* v. *Sutton,* 35 Pa., 93; *Towle* v. *American Ass'n,* 61 Fed., 446; *Leahy* v. *National Ass'n,* 76 N. W., 625; Endlich's Building Ass'ns, 2d ed., sec. 477; *State* v. *Hornbecker,* 42 N. J. L., 635; *International Ass'n* v. *Abbott,* 85 Tex., 220; 2 Am. & Eng. Ency. L. (1st ed.), 628.

As the borrowing member has no right to have dues applied as payments on his loan, it follows that he can not have them applied as interest payments, "because such payments are not made for the use of the money, but to acquire an interest in the

nature of a partnership interest in the property of the association."

"Stock dues cannot be considered in determining whether interest paid is usurious, where it is not intended to apply them to the loan until maturity." Current Law, vol. 1, p. 393.

"In determining the question of usury, stock payments are to be disregarded." 4 Am. & Eng. Ency. (2d ed.), 1071.

"Nor can it be claimed that an unvarying amount of interest for the period of time the loan is to continue is usurious, on the ground that the payments on the stock are constantly reducing the amount the borrower will ultimately have to pay; for a payment of dues has nothing to do with the payment of interest." Thornton on Building Associations, 267.

"But upon such payment of monthly dues the mortgagor can claim no interest, nor require any application of them to be made as payments at the time when received. They are not payments originally required or stipulated to be made as payments toward any loan. They are paid as the capital stock of the company, and paid alike by those who do and those who do not take loans. Those who take loans may apply them, on the final adjustment of the loans, to the discharge of the loan; but they are to be applied in a gross sum and without any interest thereon." *Barker* v. *Bigelow,* 15 Gray., 130.

The only cases, so far as we can find, that hold either that monthly dues should be credited as payments on the loan as of the date of their payment, or that dues should be counted as payment of interest on the loan, are of two classes:—

First. Those that proceed upon the theory that the assessment of stock as collateral security for the loan puts an end, at once, to the relationship of member in the association; and that the borrowing member and the association, thenceforth, occupy towards each other simply the relation of debtor and creditor; and,

Second. In those cases where the contract, from its very

inception, was usurious; or more than the legal rate of interest was stipulated for in the contract.

The weight of authority is very much against the first class, that is, the weight of authority holds that the fact that stockholder borrows from the association does not change his relation as such stockholder.

The second class of cases does not affect us, because the rate of interest charged Armor including premium was less than ten per cent.

Our case is very different from *Sokoloski's case,* 77 Miss., 155, s.c., 26 South., 361; *Tony's case,* 78 Miss., 916, s.c., 29 South., 825; *Shannon's case,* 78 Miss., 955, s.c., 30 South., 51; *Pinkston's case,* 79 Miss., 468, s.c., 30 South., 692, and others decided by our supreme court; because, in those cases, more than ten per cent interest was stipulated for and charged, when the amount charged as premium is included, as is proper.

Armor had no right to expect that on this settlement he would be credited on his loan with anything more than the value of his stock. This was all he was entitled to.

*C. Lee Crum,* for appellee.

Every point now being urged in this case, which is an appeal from the decree of the lower court rendered in accordance with the principles announced in this case in the former opinion of this court was argued on a former trial of this case here, orally and by brief, by both parties *in extenso.* At the new hearing of this case upon the application of the defendant below, now the appellant, the court below permitted amendments to be made denying that the application for membership in the association, depositing of collateral, the payment of dues, premiums and interest, the loan and borrowing of money from the Atlas Savings & Loan Association and the giving of the deed of trust, were all one scheme and arrangement to secure the loan; and also denying that the contract with Lowery was a merger of original indebtedness to the Atlas Savings

& Loan Association. The only additional testimony taken that is before the court now that was not before the court on the former appeal is the testimony of Lowery, but his testimony does not touch the question of usury and shows conclusively that Armor did not actually borrow money from him to pay this building and loan contract.

The testimony of Armor which was before the court on first appeal and is now a part of the record, shows clearly that the subscription for the stock, the contemporaneous application for the loan, the execution of the contract and deed of trust, and the depositing of certificates of stock as collateral, were all parts of the same scheme to negotiate and secure the loan and there is no testimony denying it.

In the argument of counsel for appellant the facts in the case at bar are entirely ignored in so far as the question of usury is involved. Counsel in his brief says: "The relation existing between the stockholder and the association, so far as the membership and the obligation to pay dues are concerned, by the stockholder becoming a borrower, is unchanged, we think well settled." This is the premise from which he argued. There are a great many cases reported in the books, a large number of which have been cited by counsel for appellant, holding that in those cases the borrowing member continues to be a member, and his stock dues should go to mature his stock, but the facts in those cases are not the same as in the case at bar, because in this case for all intent and purposes Armor, who borrowed this money, lost all control of his stock and ceased to be a member of the association.

Counsel cites *McPhilamy's case,* 81 Miss., 61, s.c., 32 South., 1001, as an authority for using the stock dues to mature the stock and not allow them to be applied as credits as of the dates of their payment, but there is a wide difference between the facts in *McPhilamy's case* and the facts in the case at bar. In that case the association was insolvent; in this case the *Atlas Savings & Loan Association* was solvent and went into voluntary liqui-

dation.    In *McPhilamy's case* the court held that under the con-
tract McPhilamy remained a member, in fact, of the association,
but in the case at bar, Armor is not, in fact, after borrowing
this money and depositing his shares of stock as collateral, a
*bona fide* member of the Atlas.    The court, in *McPhilamy's
case,* quotes approvingly from 7 Thompson on Corporations,
sec. 8796, the following language: "Since the cessation of the
business of the association puts an end to the contract between
it and its borrowing members and makes their loans due and
payable at once, it converts the relation between them into
that of a mere debtor and creditor and consequently should
entitle the borrower to have the dues credited on the loan, if
no equity supervenes.    Accordingly this rule is generally ac-
knowledged to prevail in cases of voluntary dissolution or
cessation of business.

Argued orally by *R. V. Fletcher,* for appellant.

MAYES, J., delivered the opinion of the court.
This case is on appeal for the second time.    Unless the stock
dues are to be credited as payments on the indebtedness, the
record shows that this contract is not usurious.    In the for-
mer case the court held that the stock dues were to be credited,
and that therefore the contract was usurious.    On an analysis
of the opinion of the court in that case the court did not hold,
and did not intend to hold, that stock dues, as a general prop-
osition, were to be credited on the indebtedness of a borrower,
where the borrower sustained the dual relation to the building
and loan association of stockholder and borrower.    To have
so held would have been to overrule the *McPhilamy case,* 81
Miss., 61, 32 South., 1001, decided long prior to the case of
*Armour* v. *Bank of London,* 86 Miss., 658, 39 South., 17.    The
court merely held, in the opinion in the case of *Armor* v. *Bank
of Loudon,* 86 Miss., 658, 39 South., 17, that upon the plead-
ings as framed in this particular case the stock dues should be

credited as payments upon the principal debt. The opinion of the court is made to hinge upon this, quoting from the opinion of the court as follows: "It is averred in the bill that the subscription for stock, the contemporaneous application for the loan, the execution of the contract and deed of trust, and the depositing of certificates of stock as collateral, were all parts of the same scheme to negotiate and secure the loan. This averment is not denied, and must therefore be treated as confessed. Section 4, art. 9, by-laws of the Atlas Savings & Loan Association, with reference to which the loan was made and the securities taken, provided that: 'Every member who procures a loan shall secure the payment by an acceptable deed of trust, mortgage, or deed on real estate, the conservative value of which must be at least twice the amount wanted, and this deed of trust, mortgage, or deed shall remain in force till the monthly dues, applied to the general fund, dividends, and reserve apportioned, make up the sum of one hundred dollars on each share drawn. The deed of trust, mortgage, or deed shall then be canceled, and such member shall cease, with regard to his incumbered shares, to be a member.' The confessed averments of the bill, taken in consideration with the section from the by-laws above quoted, make it clear that in the instant case the taking of stock was merely a condition to the getting of the loan, that appellant was in reality never to acquire any stock, but that the payment in full for the stock was *ipso facto* to pay the loan and cancel the stock. This is nothing but a scheme to evade the law against usury, and we are therefore constrained to differ with the opinion of the learned chancellor that the contract was not usurious."

This case comes back to us in quite a different aspect. The basis upon which the former opinion was grounded was that the bill averred that the subscription for stock, the contemporaneous application for loan, the execution of the contract and deed of trust, and the depositing of certificates of stock as collateral, were all parts of the same scheme to negotiate and

secure the loan.   This averment was not denied, and, this being the case, the court held that the whole transaction was but one thing, and constituted a scheme to avoid the law against usury, and therefore that the interest, the premium, and the stock dues, all being paid upon one contract according to the pleadings, made the contract usurious, and therefore both the premium, interest, and stock payments should be credited upon the principal debt, and when this was done the contract was shown to be usurious.   In this case the averments of the bill are now expressly denied, and by the terms of the contract the amounts paid as premium and interest are less than ten per cent unless the stock dues are to be credited, and the contract is therefore not usurious.   We think, as the record now comes to us, with these averments denied, that the borrower sustained both the relation of the stockholder and borrower to this association, and that his stock dues should be credited as payments upon the principal.   Under sec. 4 of art. 9 of the by-laws above quoted it is shown that while he puts up his stock as collateral security, yet he is to participate in the general funds, dividends and reserve.   In other words, he is to participate in whatever advantage accrues to any other stockholder by virtue of being such up to the time the value of his stock equals the amount of his debt.   In the case of *Sokoloski* v. *Building & Loan Association* (Miss.), 43 South., 674, the court has reannounced the doctrine laid down in the *McPhilamy case,* and nothing that is said in the opinion in the case of *Armor* v. *Bank of London.* 86 Miss., 658, 39 South., 17, in any way conflicts with the decisions in the two cases above referred to.   The whole predicate of the case of *Armor* v. *Bank of Loudon, supra,* is upon the fact that under the pleadings there was in reality no genuine building and loan contract, but a mere subterfuge, and, that being the case, all the money paid should be credited to the debt of the borrower.

*Reversed and remanded.*