GUARANTY INVESTMENT & LOAN CO. *et al. v.* STEVENS *et al.*

(Division A. Nov. 2, 1931.)

[137 So. 335. No. 29490.]

474

Rawls & Hathorn, of Columbia, and Wells, Jones, Wells & Lipscomb, of Jackson, for appellants.

Henry Mounger and R. H. Dale, both of Columbia, for appellee.

Argued orally by **C. V. Hathorn** and **Barrett Jones**, for appellant, and by **R. H. Dale** and **Henry Mounger** for appellee.

**McGowen, J.**, delivered the opinion of the court.

This case arose by a bill in equity filed by C. O. Stevens and wife against the Guaranty Investment & Loan Company of Memphis, Tennessee, the Illinois Standard Mortgage Company, a corporation of the state of Illinois, and the Chicago Trust Company, a corporation of the state of Illinois, seeking a decree that the interest and other charges made and collected in connection with said notes secured by deed of trust on their home in Columbia,

Mississippi, was usurious, the rate of interest charged being in excess of that allowed by law, and prayed that the usury be declared and the interest unlawfully charged be credited to the principal of the loan. There was answer by the appellant Guaranty Investment & Loan Company that it was the broker of Stevens in securing the loan, admitting that it charged brokerage commissions, and contending that no usury was contracted for or collected in the transaction. The other two corporations in their answers set up that the notes involved were negotiable instruments, and that they were purchasers thereof before maturity in good faith without notice of any defect in the notes, if any defect had existed prior to the purchase of same.

The court below entered a decree declaring the contracts usurious, and credited the notes with all payments made thereon together with all interest, including a brokerage fee of two hundred sixty dollars collected by the Guaranty Investment & Loan Company from the proceeds of the loan to Stevens. The amount of the loan was three thousand five hundred dollars to be paid in monthly installments spread over a period of ten years, with five per cent added to the principal and carried equally into each of the notes.

McCoy, who was in the employ of the Guaranty Investment & Loan Company, took a contract for eight per cent brokerage fee for negotiating the loan in writing from Stevens and his wife. At the same time appellees filed out an application for a loan direct to the Guaranty Investment & Loan Company, in which it was stipulated that from the loan the said company was to be reimbursed for all expenses, and pay a reasonable compensation to the company for the services rendered and to be rendered by it. After some delay Stevens and his wife executed one hundred twenty notes for forty-three dollars and seventy-five cents each, payable monthly; the aggregate sum being five thousand two

hundred fifty dollars, the amount of the loan plus five per cent interest for a period of ten years. Under the contract of loan it was agreed that the title to appellees' property should be insured by the Bank of Commerce & Trust Company of Memphis, Tennessee, and the fee paid therefor therefrom. At the same time Stevens and wife made an affidavit in which were the following statements: "That C. O. Stevens and his wife, Ida H. Stevens, the undersigned, negotiated and disposed of said notes, or delivered them together with the Deed of Trust to Guaranty Investment & Loan Company, a corporation, which has paid a full and valid consideration therefor, and the said Deed of Trust and notes thereby secured are free from any and all infirmities, whatsoever. That C. O. Stevens and his wife, Ida H. Stevens, the undersigned, made the foregoing representations in good faith and for the benefit and protection of any owner or owners, holder or holders or assignee or assignees of any of said note or notes."

This affidavit, together with the one hundred twenty notes and trust deed on the home of appellees securing said notes, was forwarded to the Guaranty Investment & Loan Company, who in turn forwarded the said papers, together with the abstract of title and fire insurance policy, to the Illinois Standard Mortgage Company, and drew a draft on that company for three thousand five hundred dollars, payable to the Bank of Commerce & Trust Company, through the Chicago Trust Company. The notes and trust deed payable to the guaranty Investment & Loan Company were assigned by it to the Illinois Standard Mortgage Company. The draft was paid by the Illinois Standard Mortgage Company, and the money forwarded to the Bank of Commerce & Trust Company, who disbursed it under the agreement. The disbursement consisted of discharging certain liens and payment of costs, recording fees, attorney fees, and two hundred sixty dollars commission to the Guaranty Invest-

ment & Loan Company. Subsequently the distribution sheet was submitted to C. O. Stevens and his wife and approved by them. It will be observed that the brokerage fee, which constitutes the alleged usury in this case, was paid by Stevens and his wife to the Guaranty Investment & Loan Company some time subsequent to the payment of the draft for three thousand five hundred dollars constituting the loan herein, by the Illinois Standard Mortgage Company through the Chicago Trust Company.

Under a trust agreement the notes secured by the real estate deed of trust were transferred to the Chicago Trust Company in the pursuance of its trust agreement in protection of its bonds, in which it had named the trust company as trustee. This trust company was also the trustee in the deed of trust herein involved. The deed of trust, among other stipulations, contained the following: "That the said party of the third part shall not be liable for the payment of any charges or interest provided for in this deed of trust that may be found could not lawfully be made under the laws of the state of Mississippi, it being fully agreed and understood that it is the intention of the party of the third part that this deed of trust shall in all respects conform to the laws of said state, and should any payments be made by the party of the first part that are found to be contrary to the laws of said state, he shall be entitled to the return of all sums so paid, and this deed of trust shall not be affected thereby."

There is also in the record, which seems to have no bearing on this case, a lengthy opinion written by a firm of lawyers relating generally to lending money in Mississippi upon real estate, the rate of interest that might be charged by contract, and the corporation laws of the state. There is no mention in fact or by inference in this lengthy letter on various subjects of this loan, but McCoy testified that he forwarded a copy of this letter

to all the appellant corporations named as defendants in this case in the court below.

It is contended that the court below erred in the following particulars: (1) In holding that the loan was usurious. (2) In holding that appellants Illinois Standard Mortgage Corporation and Chicago Trust Company had knowledge of the alleged usurious nature of the contract and that they were not innocent purchasers for value without notice. (3) In not holding that appellees were estopped to set up the charge of usury.

It is conceded that this loan was made in pursuance of chapter 136 of the Laws of 1916, section 1971 of the Code of 1930. This chapter authorizes persons or corporations to lend money in this state to be paid back in monthly installments and charge therefor a rate of five per cent per annum for the entire period of the loan, aggregating principal and interest for the entire period, and dividing the same into monthly installments, and permitting the taking of security therefor.

It may be conceded for the purpose of this decision, but we do not so decide, that the Guaranty Investment & Loan Company was the lender to Stevens and his wife, the borrowers, and that it charged and collected with the assent of Stevens and his wife, after the Illinois Standard Mortgage Company had become the holder of the securities thereof and paid its money therefor, two hundred sixty dollars brokerage fee, and this sum, added to the rate of interest charged, is in excess of the rate authorized by chapter 136 of the Laws of 1916, and is usurious; in other words that the lender charged, and the borrower paid, usury, and thereby all interest was forfeited as between borrower and lender.

If the Illinois Standard Mortgage Company and its assignees were purchasers of the paper involved here, before its maturity, for value without notice of any defect in the title to the notes, they are, under our Negotiable Instruments Law, holders in due course.

The chancellor in the court below held that the clause quoted, supra, from the deed of trust was notice to all persons to beware of paper contracting against the usury laws of this state, and that said affidavit executed by Stevens and his wife, sent to the Guaranty Investmen & Loan Company and by it in turn forwarded to the Illinois Standard Mortgage Company, was so unusual and unnecessary that it constituted a badge of fraud and notice; and the chancellor further held that the fact that the Illinois Standard Mortgage Company paid full present worth of the paper, three thousand five hundred dollars, constituted notice that the original lender, the Guaranty Investment & Loan Company, was not making anything by the transaction, and therefore that put it upon notice to inquire.

We are unable to follow the logic of the court below in adopting this theory. If A executes his paper to B, and B undertakes to sell the negotiable instrument to C, and C should inquire of A if there was any defect in it or any defense against it, and A should answer that there existed no defect in the paper, what court would say that the inquiry had not terminated, and that subsequently C, buying the paper, would be protected by this oral statement? But the debtors in this case went further, and swore absolutely that no defect or infirmity existed in the paper. If the clause quoted in the deed of trust was notice, as to which we do not express an opinion, the affidavit was an answer from the one person qualified to reply thereto, that, notwithstanding that fact in the contract, there was in fact no defect. Instead of being a badge of fraud in this case, it is a representation to the world that the notes and deed of trust securing same contained no vice. After the paper had passed from the hands of the Guaranty Investment & Loan Company, the borrowers, Stevens and his wife, consented to pay to said loan company two hundred sixty dollars. Usurious commissions did not affect the title

which had already been perfected in the Illinois Standard Mortgage Company.

Section 2708 of the the 1930 Code is as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face. (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 2715 of the Code of 1930 is in this language: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

There is no contention in this case that there was any business connection between the Illinois Standard Mortgage Company and the Guaranty Investment & Loan Company. It is undisputed that the Illinois Standard Mortgage Company knew nothing of the Guaranty Investment & Loan Company's method of doing business and had no knowledge whatever, except such bad faith as may be imputed from the quoted portion of the deed of trust, and the fact that the maker of the notes and deed of trust swore there were no defects in them. There was no bad faith imputable to the Illinois Standard Mortgage Company because it saw an affidavit made by the makers of the Negotiable instrument that there was no infirmity in the instrument. The inquiry had been made, and it had no knowledge aside from the facts stated herein. Aside from that, the brokerage commission was paid by the borrower herein after his negotiable instrument had passed into the hands of the holders in due

course, and after they had paid value received therefor. It is manifestly true that no bad faith can be imputed because the payee in paper sells same without making a profit. To approve that kind of rule would be to destroy to an alarming degree the integrity of commercial paper known as negotiable instruments and its value upon the money markets of the world. We think no authority can be produced to the contrary of the holding we have announced here, that under the circumstances of this case the appellant, Illinois Standard Mortgage Company and its assignees, were holders of the papers here involved in due course, complete and negotiable upon their face and acquired before maturity in good faith for value, and that at the time the paper was bought by them neither of the corporations had any notice of any infirmity in the instrument or defect in the title of the person negotiating it. Nor can it be said that the corporations had knowledge of the fact that their action in taking the instruments amounted to bad faith. The contrary is true. The makers of the notes here, by their sworn representations, lulled all suspicion and put to rest any doubt in the mind of any reasonable person that there was any infirmity in the instruments negotiated.

We have examined the case of Comstock v. Rayford, 12 Smedes & M. 369, and think it has no applicable bearing to the facts of this case. We are persuaded that an investigation by the Illinois Standard Mortgage Company on the day it paid its money would not have revealed any imperfection in this paper, but whether it would have or not it was not the act of the Illinois Standard Mortgage Company that the affidavit was made and sent out to the world by the borrowers in this case, but it was their own free and voluntary act so far as this record discloses, and whether there was vice in the paper or not no further investigation was necessary when that affidavit was presented to the prospective purchasers

that the negotiable instruments it accompanied were free from imperfections, valid, and binding upon the makers thereof. There is not even a suspicion in this case that can be attributed to the action of the appellants Illinois Standard Mortgage Company and Chicago Trust Company that they did not act in good faith.

It follows that we are of the opinion that the bill in the court below should have been finally dismissed.

Reversed, and decree here for appellants dismissing the bill.