UNION NATIONAL BANK *v.* M. L. & A. FRASER AND M. L. & A. FRASER *v.* UNION NATIONAL BANK.

1. USURY.  *Renewal notes in running account.  All items affected by usury.*
   F. had a running account with S., a banker.  S. would lend the laborers of F. money, charging them interest at the rate of one and a half to two and a half per cent. per month.  At the end of the year, the balance that remained unpaid by such laborers S. would charge to the account of F.  In March, 1881, F. made a note in favor of S., due November 1, 1881, for eleven hundred and sixty dollars.  S. discounted this note and credited the account of F. with one thousand dollars   When the note fell due, F. paid S. one hundred and sixty dollars, and gave him a renewal note for twelve hundred and forty dollars, due November 1, 1882.  ·When this renewal note fell due, F. paid S. two hundred and forty-six dollars, and gave him a second renewal note for twelve hundred and forty dollars, due November 1, 1883.  This note was in turn taken up by a third renewal note for twelve hundred and forty dollars, due November 1, 1884, and bearing interest at ten per cent. per annum from maturity.  This last note was assigned to U., who knew nothing of the character of the transactions between S. and F.  U. brought a suit to enforce a mortgage given to secure this note; and F., the defendant, set up the defense of usury.  *Held,* that the several notes being but items in a running account, the note sued on is affected by all the usurious dealings between the parties.

2. SAME.  *Note for legal interest.  Oral agreement for usury.  Section 1141, Code 1880, applied.*
   In the account stated between the parties in such case the creditor should not only lose the usury collected or claimed, but all of the interest, if the contract was made after the adoption of ·the Code of 1880, which in ¿ 1141 thereof provides that "if a greater rate of interest than ten per cent. shall be stipulated for, in any case, all interest shall be forfeited."  This statute cannot be evaded by taking a note stipulating for ten per cent. interest on its face, and at the same time having an oral agreement for the payment of a greater rate of interest.

3. SAME.  *In statement of account.  Statute of limitations.*
   And in such case the amount paid for usurious interest is not a mere set-off, against which the three years' statute of limitations will run, but is a pay-

ment on the account by operation of law, and against which such statute does not run.

4. USURY. *Negotiable note. Waiver of defense to. Purchaser without notice of usury. Statute against usury.*

A stipulation in a negotiable note that the maker will pay without defalcation or discount, and that he waives all defenses to the payment of such note in the hands of a *bona fide* purchaser for value, does not preclude such maker from availing himself of a defense to the note under the statute against usury, notwithstanding the note may be in the hands of, and the action brought by, a *bona fide* purchaser for value, without knowledge of the usurious taint.

APPEAL AND CROSS-APPEAL from the Chancery Court of Grenada County.

HON. J. G. HALL, Chancellor.

The Union National Bank of Louisiana brought this bill against M. L. & A. Fraser and Jacob Snider, citizens of Grenada County.

It appears that on November 1, 1880, N. C. Snider, a banker, and M. L. & A. Fraser, planters, began a series of business transactions which lasted until the death of Snider in May, 1884. The plan of conducting the business was this: At the beginning of a year the Frasers would determine how much money they would need during the year, would make their note for that amount plus the interest, and Snider would discount the note and place the amount to the credit of the Frasers, who would draw against it as they needed the money in their farming operations. It was also agreed between them that Snider should furnish money to the laborers on Frasers' place and that the Frasers would be responsible therefor. Snider, under this agreement, would let such laborers have money, charging them interest thereon at the rate of one and a quarter to two and a half per cent. per month. At the end of the year the laborers would carry their cotton to Snider, who would sell it and credit the proceeds to their account. If there were a balance remaining due to Snider, he would transfer such balance to the account of M. L. & A. Fraser. This continued until Snider's death in May, 1884.

In March, 1881, the Frasers executed their note to Snider for eleven hundred and sixty dollars, due November 1, 1881,

with ten per cent. interest from maturity. This note was discounted by Snider and one thousand dollars passed to the credit of the Frasers on his book. On November 1, 1881, the Frasers paid Snider one hundred and sixty dollars and executed a renewal note for twelve hundred and forty dollars, due November 1, 1882, thus taking up the first note. On May 1, 1883, the Frasers paid two hundred and forty dollars, and on May 22 executed a second renewal note for twelve hundred and forty dollars, due November 1, 1883. On January 26, 1884, the Frasers executed a third renewal note for twelve hundred and forty dollars, due November 1, 1884. The consideration for these several notes was the original one thousand dollars placed to the credit of the Frasers by Snider and interest charged thereon. The two hundred and forty dollars interest on the last note was paid by a separate note. This last note, which is the basis of this controversy, contained the following clause: "Negotiable and payable without defalcation and discount at Snider's bank, and hereby waive all defense to the payment of this note in the hands of a *bona fide* purchaser or holder." This note was secured by a mortgage on certain property belonging to the Frasers. N. C. Snider, in order to obtain money, indorsed this note before it matured to the Union National Bank, who knew nothing of the nature of the transactions between the parties. J. B. Snider, the surviving partner and executor of N. C. Snider, having failed, on the 14th of October, 1884, assigned to one A. V. B. Thomas for the benefit of his creditors, and the Frasers then learned that their note had been transferred. On the maturing of the note, it not being paid, complainant instituted this suit to foreclose the mortgage given to secure the payment thereof. The defendants defended on the ground that there was usury charged in the various transactions between the parties, and that the several amounts paid by defendants as interest in the course of these transactions ought to be credited on this last note. The Chancellor so held, and appointed a commissioner to purge the account of usury, directing him as follows: "Said commissioner will charge the defendants with the sum of money actually advanced to them by said N. C. Snider, and will

credit them with all sums of usury paid upon said note and other notes and transactions out of which the same arose, and with all sums of usury paid by them upon advances to their laborers, as aforesaid, provided such payments were made within three years before the bringing of this suit and before notice of the assignment of the note sued on by complainant." The commissioner reported a balance of seventy-five dollars and twenty-seven cents due complainant, which report was confirmed by the Chancellor, and both parties appealed.

*Horton & Adams,* for the appellant and cross-appellee.

1. This court will observe that this note, evidencing the debt attempted to be enforced by appellants, was the third renewal of a note given on the 8th day of March, 1881, and contains in itself no usurious interest, except the two hundred and forty dollars as principal, and appellants are *bona fide* holders without notice of usury that lurked in former notes renewed. See *Torrey et al.* v. *Grant,* 10 S. & M. 89. It is true the first of this series of notes, for eleven hundred and sixty dollars, was given for one thousand dollars, and the last note is for twelve hundred and forty dollars, and it is equally true that, however fairly for defendants the subject may be viewed, there cannot be more than two hundred and forty dollars of usury in the note in controversy. The two hundred and forty dollars and the one hundred and sixty dollars paid on former notes in this chain of dealing were paid as interest. So say J. B. Snider, and A. Fraser, one of defendants.

In keeping with the principle announced in *Torrey* v. *Grant, supra,* is that in *Coulter* v. *Robertson,* 14 S. & M. 29: " It is settled that where an original contract is illegal any subsequent contract which carries it into effect is also illegal. When the consideration of a contract is impeached for illegality, if the subject-matter of the contract can be traced back to an original illegal contract, the substituted security is void. And this principle applies if the parties sought to be charged on the substituted security were ignorant of the illegality of the original contract, if the *party seeking* a recovery was a *privy to the original illegal con-*

*tract.*" There is no pretense that appellants were "*privy* to the original illegal contract." Hence the note sued on, or rather sought to be enforced, cannot have stricken from it anything save, *perhaps*, the two hundred and forty dollars renewed, which was brought forward from the second note, and of this the appellants had no notice, and it had become principal in a *former* note, and not, for the first time, of the note in controversy.

Our statute, § 1141, does not make the contract embracing usurious interest void, but, " if a greater rate of interest than ten per cent. shall be stipulated for, in any case, all *interest* shall be forfeited."

2. It will not do to treat the *interest paid* on the former notes as offsets to this note, because it would effectually destroy the principle of law just cited and recognized as, and announced to be, law by our supreme court—a kind of confession and avoidance. To treat it as payment would, in like manner, substantially and effectually destroy it, which is beyond the intention of the statute.

A list of authorities holding different views as to the validity and invalidity of the *usurious instrument itself* in the hands of an innocent holder may be found in 2 Am. Dec. 155.

When one pays part of an usurious note and gives a new note for the residue, the new note will not be infected by the usury.  2 Hals. 130.

3. All the notes, as shown as exhibits or otherwise, mention the rate of interest as being ten *per cent.*, and if the notes executed by the laborers and the Frasers—if defendants signed said notes— showed more than ten *per cent.* as interest, then defendants should have exhibited them, for they were " peculiarly within their knowledge." These notes, signed by the laborers, were for money they were to receive. No verbal arrangements to pay usurious interest—although notes be executed for amounts to be received— unless *interest* be contracted for as interest in the notes, is a violation of the statute prohibiting usury, and any payment of usury under such arrangement is voluntary and a gift. Defendants and their laborers exhibited wonderful foresight if they exactly antici-

pated their wants, and Snider furnished neither more nor less in a single instance than was previously agreed upon.

We claim that the one hundred and sixty dollars, which was the discount paid on the note maturing November 1, 1881, should not have been allowed as an offset against the claim of the complainants, as it was barred by the statute of limitations, even should this court hold that the two hundred and forty dollars which was paid May 1, 1883, should be allowed as a set-off.

*W. C. McLean,* for the appellees and cross-appellants.

1. The first question which the record presents is whether the stipulation in the note to the effect that " the makers agree to waive all defense to the same in the hands of a *bona fide* purchaser for value " is a valid agreement and estops the party from making the defense.

A contract in violation of public policy is void. This identical question was settled in *Crane et al.* v. *French,* 9 George 531–2. That was a case in which an agreement had been made not to plead the statute of limitation; and the court held that the agreement was in violation of public policy and hence void; and the court likened it to an agreement not to plead usury, and says, page 532 : " This policy stands upon the same reason of the public good as the laws in relation to usury. Would an action lie for the breach of an agreement not to plead usury in case the party should make the defense in disregard of the agreement ? It appears not, and the reason is that the defense is not only a private right to the individual, which is founded on public policy, which is promoted by his making it, and contravened by his refusal to make it." Since the usury laws have been in force, men in all lands have been exercising their ingenuity in order to formulate and concoct a scheme or plan by which the usury laws can be avoided, and the courts of all countries have been astute in setting aside those agreements and in ferreting out the device. If this agreement in this case should be held to be valid, no greater blow could be given to the law against usury; in fact, it would be virtually a repeal of the usury statute; if this agreement be held valid, then the usurer will always demand that the borrower shall sign an agreement waiving his defense to the note.

2. The vital question at issue is whether Fraser and wife can be allowed to deduct from the note the amounts of usurious interest exacted by Snider from November, 1881, to the institution of this suit.

There are three separate and distinct grounds why the usurious interest paid by defendants to Snider should be deducted from the note:

(1) The note sued on is not a separate and independent transac* tion, but is one of a series of connected transactions.

(2) The rule is undoubted that when a party makes a payment, *though expressly* agreed at the time that the same shall be applied in settlement of the illegal interest, yet the law will apply it as a payment upon the principal. *Polkinhorm* v. *Hendricks,* 61 Miss. 366. If this rule be applied, the same result will be reached as was arrived at in the court below.

(3) But granting, for the sake of the argument, that the contract for the said several years is not executing but executed, yet we maintain that the decree is correct. Under this head, the question is whether one who has paid usurious interest can recover back all of the interest paid or only the excess over lawful interest, arises. We submit that this question was settled in *Bend* v. *Jones,* 85 Miss. 368 (cited with approbation in *Chaffe* v. *Wilson,* 59 Miss. 15) and *Mattock* v. *Cobb,* 62 Miss. 43.

3. If we have been correct in the position stated in this argument upon the appeal of the bank, it necessarily follows that our cross-appeal should be sustained.

We complain of this : that the Chancellor refused to take into consideration the usurious interest exacted and paid by defendants during the year 1880 and up to November, 1882.

COOPER, C. J., delivered the opinion of the court.

We concur with the Chancellor in the opinion that the note sued on and all those of which it is the successor were but items in the running account kept by Snider against the defendants, and so intimately connected with all the other debits and credits that it is affected by all the usurious dealings between the parties. The Chancellor rightly directed the commissioner to purge the whole

account of all usury. There was no error, therefore, in the order of reference to which the complainant could except. But the usury which had been charged and paid was not, under the circumstances, a mere set-off against the note, against which the statute of limitations of three years would run; all sums which had been so paid were by operation of law payments on the account, and against payments no statute of limitations runs. It was error to limit the time in which payments so made should be allowed the defendants as credits on the note. Only so much can be credited on the note as might have been on the account from which it arose. It was also error to purge the account only of the usurious interest. The statute, Code of 1880, § 1141, declares: "And if a greater rate of interest than ten per cent. shall be stipulated for in any case all interest shall be forfeited." It is a mistake to suppose that one may take a note stipulating for ten per cent. interest on its face and at the same time orally stipulate for a greater rate of interest and collect the same under the agreement, and when a plea of usury is interposed evade its effect by appealing to the form of the note. The statute inflicts the penalty of the loss of all interest where there is a stipulation for a rate exceeding ten per cent., and whether this stipulation is in or out of the note, whether in writing or by parol, the statutory penalty will result. It is what is done and not how it is done that is to be regarded. The commissioner should have been instructed to charge against the defendants only the principal of the indebtedness and to credit thereon all payments made, disallowing any interest on the sums advanced after November 1, 1880. The result of such an account, it is manifest, would show that at the time of the notice of the assignment of the note there was nothing due from the defendants to Snider.

The fact that in the note the payees promise to pay the note "without defalcation or discount, and waive all defense to the payment of this note in the hands of a *bona fide* purchaser or holder," does not preclude them from availing of the defenses allowed by the statute. The negotiability of promissory notes is regulated by the statute, and not by the contract of the parties evidenced by the instrument. But for the statute the note in common form

would have held the makers to the payment of the sum secured by it to any person who should take it in the usual course of business without notice of the want of consideration or of the set-off held by the makers; the stipulation that it should be paid without default or discount, and that all defenses against a *bona fide* holder for value should be waived, would have been surplusage, adding nothing to the terms of the instrument. The attempt here is to repeal the statute as to this particular note by a contract that its provisions shall not prevail. This it was not competent for the parties to do. *Allein* v. *Bank*, 3 S. & M. 48.

*Reversed on cross-appeal and bill dismissed.*