ALLEN *v.* GRENADA BANK *et al.*

(Division B. Oct. 14, 1929. Suggestion of Error Overruled November 25, 1929.

[124 So. 69. No. 28000.]

**B. B. Allen,** of Indianola, for appellant.

**Alfred Stoner,** of Greenwood, for appellant.

Chapman, Moody & Johnson, of Indianola, for appellee.

Argued orally by **Alfred Stoner**, for appellant, and by **C. C. Moody**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

In December, 1920, J. A. Ely and his wife, L. B. Ely, were endeavoring to secure a loan of fifty thousand dollars, the proceeds to be used to retire matured mortgage obligations then resting upon their plantation, and to finance their farming operations for the ensuing year. The matter was discussed with the Bank of Morehead, which was affiliated with the Grenada Bank, and it was arranged that the cashier of the Bank of Morehead and Mr. W. L. Harrison, a director in the Grenada Bank, should accompany Mr. Ely to Grenada to interview Mr.

J. T. Thomas, the head of the Grenada Bank. This interview was had, and it was agreed that the Grenada Bank would make the loan at the rate of eight per cent. per annum interest from the date of the loan, interest payable annually, the principal to be repaid in annual payments throughout five years.

Accordingly two deeds of trust were prepared and were duly executed, one for thirty thousand dollars and the other for twenty thousand dollars, in addition to which the interest at the rate aforesaid and from date was secured by the same deeds of trust. At the same time a third deed of trust was prepared and was executed to secure a note for five thousand dollars, payable to Grenada Bank, or bearer, with eight per cent. interest from its date, interest payable annually, principal due and payable November 15, 1925. All these notes were payable to Grenada Bank or bearer, and all were dated the same day, December 27, 1920.

It is with reference to the third note for five thousand dollars, payable November 15, 1925, that this litigation has arisen. Mr. Ely upon its maturity and presentation declined to pay it on the ground, as contended by him, that the said note was given to said Grenada Bank as a bonus, so called, for making the said loan of fifty thousand dollars, and that, since the notes and deeds of trust securing the said loan of fifty thousand dollars carried eight per cent. per annum interest from date, the limit allowed by law, the additional amount of five thousand dollars exacted from him was wholly of usury and unenforceable, and this contention was supported by Mr. Ely in his testimony on the hearing of this cause.

In opposition to this contention the Grenada Bank avers, and supports the same by testimony, that the said five thousand dollar note was never its property, was never delivered to it as owner or holder, but was in fact at all times from and including its delivery, and

afterwards until transferred by him, the property of the said W. L. Harrison, and that it belonged to Harrison for the reason that Harrison at the instance and on the procurement of Ely had rendered valuable services to the Elys in effectuating an arrangement whereby more than forty thousand dollars of the prior indebtedness of the Elys to several creditors could be compromised and discharged for thirty-five thousand dollars, and for the further consideration that Harrison should indorse the principal notes of the Elys to the Grenada Bank up to the amount of twelve thousand dollars; that Harrison did indorse twelve thousand dollars of the said Ely notes to said bank and in addition thereto gave security therefor out of the individual and private property of said Harrison, all with the knowledge and consent of the Elys and in fact at their request and procurement.

In September, 1923, prior to the maturity of said five thousand dollar note, and when it bore an indorsement thereon that the interest had been paid to January 1, 1922, the said note was transferred by said Harrison by delivery to appellant; the said appellant being shown by the evidence to have taken the same for value without notice of any defense or claim of defense thereto. The note not being paid, appellant brought suit thereon against J. A. Ely, L. B. Ely, W. L. Harrison, and Grenada Bank, averring in his bill that the makers of the note had declined payment on the ground of asserted usury, and further averring the facts of the origin of the note, its alleged delivery by the bank to Harrison, and of Harrison's transfer of it for value to appellant, and prayed for relief against all of the parties or in the alternative against such of them as the court should upon the facts find liable. Ely and wife filed a cross-bill in which they prayed that, in the event the court should hold them liable, the decree should be so framed as to give them relief over against the defendant bank. The

court upon the hearing dismissed the bill as to all the defendants and left the holder of the note without relief.

It is not contended by any of the parties that the note was not complete and regular on its face; it is not contended that it was not genuinely signed and actually delivered; and it is admitted that it has not been paid. On what theory the suit could have been dismissed as to all defendants we are therefore unable to perceive, nor are we advised by the briefs or arguments on what grounds an entire dismissal could have proceeded. If the contention of the bank be true that the note was given direct to Harrison for the services mentioned and for a required indorsement and independent security by him of a large part of the fifty thousand dollars, then the Elys are originally liable, Pass v. New England Mortgage Security Co., 66 Miss. 365, 6 So. 239, and on the other hand, if the Elys are not liable, and if the note was in fact given to the bank as a bonus or compensation to the bank for making the loan, then the bank would be liable for wrongfully putting into circulation a usurious, but apparently valid, negotiable paper to the injury of an innocent party. Therefore in either of the cases stated, some of these defendants are liable on the present record.

But in any event we are of the opinion that the Elys are liable to appellant. As already said the note was actually executed and delivered by the Elys, and it is complete and regular on its face. It is shown by the undisputed testimony that appellant became the holder before maturity for value and without notice. It is the general rule that against an innocent holder of negotiable paper the defense of usury is not available unless the usury statute expressly makes the contract void, and the weight of authority is to the effect that a statute, such as ours, which does not in express words denounce the contract as void, but in lieu thereof provides certain

penalties and forfeitures for its violation, is not such a statute as to justify the implication that the legislation was intended to make a contract in violation thereof utterly void. At an early day in Commercial Bank v. Nolan, 7 How. (Miss.) 508, our court aligned itself with the majority view on that question, as a careful study of that case, we think, will reveal. In the recent case, Byrd v. Lumber Co., 118 Miss. 179, 79 So. 100, it was held that our usury statute must be strictly construed, and one of the meanings of strict construction is that the words shall not be enlarged by intendment to embrace something not expressly included in the exact words used. We are therefore not authorized to hold that our usury statute, although not expressly declaring a usurious contract absolutely void, yet intended to do so; from which it follows that the usurious contract, if it was usurious, was not so utterly void as to admit the defense against an innocent holder for value. 27 R. C. L., pp. 244-246; 39 Cyc., pp. 911, 1078-1079; and see the concise annotations pages 773-778 in L. R. A. 1918C. It will be observed that the annotators have appeared to consider that the cases, Union Nat. Bank v. Fraser, 63 Miss. 231, and Armor v. Bank of Loudon, 86 Miss. 658, 39 So. 17, have placed our state among the minority on the point dealt with in this paragraph of this opinion; but those cases are not to be construed as proceeding upon that ground, for it is to be remembered that those decisions were rendered when our anticommercial statute was in full flower, and when notes payable to order were subject to all defenses even in the hands of innocent purchasers. But the anticommercial statute does not apply to a note made payable to bearer, Craig v. Vicksburg, 31 Miss. 216; Stokes v. Winslow, 31 Miss. 518; Mercien v. Cotton, 34 Miss. 64, as is the case now at the bar. For that reason we are not called on to express any opinion as to the present effect of that sec-

tion of our laws, known as the anticommercial statute (Hemingway's Code 1927, section 2740), which has not yet been expressly repealed, as viewed in connection with the enactment in this state of the Uniform Negotiable Instruments Law (Hemingway's Code, 1927, sections 2755-2879) except that we may add that the recent trend of judicial opinion in this state shows that our state has kept well in step with the progress of the times on questions of the honor and protection of commercial paper. Despres et al. v. Hough Drug Co., 123 Miss. 598, 86 So. 359; Elkin Henson Grain Co. v. White, 134 Miss. 203, 98 So. 531; Currie-McGraw Co. v. H. & J. Friedman, 135 Miss. 701, 100 So. 273, and several more recently.

The second principal question, raised and urged in the trial court, and brought forward here, is that, in the event the court should find from the facts and should hold that the contract was usurious, but nevertheless that the makers of the note were liable to the complainant as an innocent holder, then the court should also hold, and should so provide in its decree, that the defendant bank is liable over to the makers for its tort in wrongfully putting into circulation the usurious note and thereby causing a state of facts to arise which imposed liability on the makers when without said wrongful putting of the usurious paper into circulation there would have been no liability. As already said, it cannot be told what finding on the facts the trial court made, and for all we can tell from the record, and the decree, the court may have been of the opinion that the transaction was usurious; and since the case is to be wholly reversed and is to stand for a new trial as if never before heard, we deal with the issues of law presented on either view of the case, one of which is that the court might hold the contract usurious.

And just here we are confronted with the further contention, urged with great earnestness upon us, that the

court has no other recourse under the law than to find the contract to be usurious for the reason, as it is argued, that the note was made payable by its express terms to "Grenada Bank or bearer" and that to admit extrinsic evidence that it was not originally the property of the said bank, that the note was never taken by the bank, would be to contradict or vary the terms of the written instrument by parol evidence. There is no question that the general rule with reference to the inadmissibility of extrinsic testimony to vary or contradict the terms of a complete written instrument applies to negotiable instruments, Hardy v. Pilcher, 57 Miss. at pages 21, 22, 34 Am. Rep. 432; Martin v. Smith, 65 Miss. at page 3, 3 So. 33, but it is also true that "in accordance with the rules applicable to writings in general it is permissible to show by parol or extrinsic evidence, as between the original parties or those with notice, the true capacity or legal relation of the parties to a negotiable bill or note," 4 Jones Com. Ev., section 1646, and that "parol evidence is admissible to show for whose benefit a contract was made," 22 C. J., p. 1235, and see, also, 3 R. C. L., p. 879, and note 18. Accordingly it was held in Graves v. Mississippi & A. R. Co., 6 How. (Miss.) 548, that, although a note was made payable to a bank, parol evidence was admissible to show that the note was never the property of the bank and to show the real owner to have been from the beginning a particular individual rather than the nominal payee. This must be true then for the stronger reason when, as is the case here, the note is payable to a named payee or bearer. The immediate point here is one that concerns only the original parties to the note. So far as appellant is concerned, what he bought and all he bought, and all he has a right to claim on his part, is a good note against the makers. He did not purchase a note bearing the indorsement of the bank or Harrison. The point

is one however that very materially concerns the rights of the original parties to the note. We hold therefore that the contention in this paragraph mentioned is not sustained.

If the trial court should on a new trial hold that the note was usurious, as to which, on the facts, we express no opinion, that not being within our province just now, we would have this case: When a party takes a note as a bonus, so called, for making a loan, and in addition to the bonus note takes other notes for the full amount of the sum actually loaned with interest stipulated in the latter notes from the date thereof for the full limit of the allowable legal interest, then the party has taken a usurious note, and knows that he has done so, or is charged in law with such knowledge fully and for all purposes, although in actual fact his ignorance of the legal effect may have been so dense that he failed to perceive the usury. If such party could evade the conse- quences by the simple devise of transferring the note to an innocent purchaser for value and thus make the payee liable, and this would be the end of the matter so far as concerns the usurer, then the law would furnish a ready convenience to the consummation of a wrongful contrivance and would become a mere handmaiden to evasions and impositions. There would be a party who holds a note which in his hands is unenforceable and up- on which the maker is not liable to him as he well knows; he transfers it to a bona-fide purchaser so that under the rules of law appertaining to commercial paper he, by his said action, converts an unenforceable obligation into a valid obligation, does something which he knows ought not to be done, wrongfully creates an enforceable obligation against a maker which would not exist except for his said wrongful act, and could it be said that he is not liable for his wrongful conduct, although it injured another and he knew at the time it would injure that other as well as the probable extent and nature of that

injury? To state the question is to answer it and to affirm his liability. The principle is well illustrated in Nashville Lbr. Co. v. Fourth National Bank, 94 Tenn. 374, 29 S. W. 368, 27 L. R. A. 519, 45 Am. St. Rep. 727. And it makes no difference that the usurer first places the note in the hands of a volunteer who paid nothing to the usurer, and this volunteer made the transfer for value to the bona-fide holder, for the principle is not based upon the question whether the usurer derived profit out of the transaction, but upon his willful wrong in injuring another, and in a manner wherein the result of his wrong was within his reasonable contemplation as a natural and probable consequence of his said act. The situation measures up to the most exacting definition of an actionable tort. Moreover, it is within the contemplation of the statute itself, which provides in terms that all such usury "may be recovered back," thus silencing all contention that the maker of the usurious note is in pari delicto, and thereby cut off from relief, as has been held in some states.

Where the recovery of the complainant against one defendant raises or creates a liability of another defendant to the defendant first mentioned, as a direct, and not as a collateral, consequence of the immediate facts of the case as disclosed by the bill and answers, that is to say, where the claim of one defendant against another results directly, and not collaterally, under the immediate facts of the case as made by the bill and answers, from the recovery of the complainant against the first defendant, then the said defendant may have appropriate relief in the decree against his codefendant without cross-bill. This point is more fully covered in Griffith Miss. Chancy. Prac., section 616, pp. 696-697. So that it follows, if the said note was usurious, and the defendants Ely are liable to complainant only by reason and as a direct consequence of the wrongful act of the de-

fendant bank as aforesaid, then the defendant bank is liable over to the Elys, and because the latter liability arises out of a direct chain of facts from Ely thence to and through the bank and thence to complainant, every link of which chain belongs in the making of the complainants' case against the first defendant, if usury is found to be the fact, appropriate provision may be made in the decree in respect to that latter liability without the necessity of a cross-bill; and in consequence it follows further that the question is properly before us on this appeal.

There are ten other assignments of error not directly dealt with in the foregoing portion of this opinion. Several of these assignments are well taken, but to endeavor to cover them would extend this opinion beyond all reasonable bounds; and since the assignments mentioned are in respect to details and not upon the case in its larger aspects, we make no further reference to them in the reasonable expectation that the law of the case in its said larger aspects being settled, these errors in detail, or such of them as are errors, will not appear in the subsequent hearing.

Reversed and remanded.