INTERSTATE LIFE & ACCIDENT CO. *v.* PANNELL.

(Division B. Feb. 5, 1934.)

[152 So. 635. No. 30997.]

Chas. Lee Crum, of New Albany, for appellant.

B. N. Knox, of New Albany, for appellee.

Argued orally by **B. N. Knox**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the circuit court of Union county against appellant on a one thousand dollar life insurance policy, issued by appellant to Mrs. Daisy P. Jones, the daughter of appellee, in which policy appellee was named as the beneficiary upon the death of the insured. The trial resulted in a verdict and judgment for appellee for the face value of the policy, one thousand dollars. From that judgment appellant prosecutes this appeal.

At the conclusion of the evidence, both parties requested a directed verdict; that of appellant was refused, and that of appellee was granted. There was no conflict in the material evidence in the case; therefore, one or the other of the parties was entitled to a directed verdict. The sole question in the case was whether or not appellant waived the forfeiture of the policy for non-payment of the second premium. Appellee contends, and the trial court held, that forfeiture was waived by the action of Roy Jackson, soliciting agent of Rhodes & Sloan, appellant's general agents.

Appellant's home office and principal place of business was at Chattanooga, Tennessee, when the policy of insurance was issued and at the time of the trial. The insured, Mrs. Daisy P. Jones, was, at that time and also at the time of her death, a resident of the city of Chattanooga, in that state. Rhodes & Sloan conducted a general insurance agency in that city, representing appellant and other insurance companies. Roy Jackson, who resided

in the same city, was employed by Rhodes & Sloan as a soliciting agent. He had authority to solicit insurance, collect the first premium and any renewal premium where a policy had lapsed.

The policy here in question went into effect October 1, 1929; it provided for an annual premium of forty-two dollars and eighty-five cents, payable in advance. The first premium was paid. The second premium was due on or before the 1st of October, 1930. The policy contains the usual grace period of thirty days. The second premium was not paid within the thirty days of grace. On November 2, 1930, the grace period had expired. Sixteen days thereafter, on November 18, 1930, for the purpose, as claimed by appellee, of continuing the policy in force, Roy Jackson and Mrs. Jones entered into the following agreement: That Mrs. Jones would pay twelve dollars and eighty-five cents cash and give her note for the balance of the premium, thirty dollars, payable on the 15th of February, 1931, with six per cent. interest from October 1, 1930, until paid. Accordingly, on that date Mrs. Jones gave Jackson a check on the American Trust & Banking Company of Chattanooga for twelve dollars and eighty-five cents; this check was payable to Jackson, not to Rhodes & Sloan, nor to appellant. On the next day, November 19, 1930, Mrs. Jones executed a note for thirty dollars, payable to appellant on February 15, 1931, with six per cent. interest per annum from October 1, 1930, until paid. The note recited that it was accepted by appellant at the request of the maker, together with twelve dollars and eighty-five cents, in cash upon the express agreement that, although no part of the premium due on the 1st of October, 1930, on the policy involved, had been paid, the insurance thereunder should be continued in force until midnight of the due date of the note, and, if the note was paid on or before its due date, or within ten days thereafter, such payment, together with the twelve dollars and eighty-five cents, should then be

accepted by appellant as payment of the premium, "and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day due, or within ten days thereafter, said policy shall lapse," etc.

The check for twelve dollars and eighty-five cents was turned over by Roy Jackson to his principal, Rhodes & Sloan, who held it until the 5th day of January, 1931, when it was cashed and the proceeds held in "suspense account." The thirty dollar note was not turned over to either appellant or Rhodes & Sloan, but was held by Jackson until the 8th day of January, 1931. On that date, according to the testimony of Jackson, Mrs. Jones telephoned him that she desired to see him with reference to reinstating her insurance. Jackson went at once to see her about the matter. During this interview Jackson gave her the following receipt: "Received of Daisy P. Jones ($30.00) Thirty Dollars for balance premium note. Roy Jackson. 1/8/1931." The check she had given Jackson for the twelve dollars and eighty-five cents had this notation on the bottom: "Payment on insurance policy." On the back of the check was this indorsement: "Roy Jackson. Pay First National Bank, Volunteer Branch, Interstate Life & Accident Co., Rhodes & Sloan, Mgrs. L. W. Rhodes. R. S. Sloan." Also on that day, on one of appellant's application forms for reinstatement of lapsed policies, Mrs. Jones made application for the reinstatement of her policy. In this application she answered the usual questions and signed it in the presence of Jackson. The last three paragraphs of the application embody certain declarations and stipulations by Mrs. Jones, and are in this language:

"I, the undersigned, hereby declare that I am the person to whom the above numbered policy was issued, that I have carefully read each and all of the above answers; that they are each written as made by me; and I, on behalf of myself and of any and all persons who shall

have or claim any interest in any insurance made or reinstated hereunder, declare that each answer is full, complete and true; and I hereby agree that they shall together with the statements made in my original application, be taken as the basis of the reinstatement of the above policy, which policy, by nonpayment of the premium due of the —— day of ——, 19—, is not now in force, except as may be provided in the nonforfeiture provisions thereof. I also agree that each and all the matters inquired about and answered above are material to the risk I am asking the Company to assume.

"I further agree that said policy shall not be considered reinstated by reason of any cash paid or settlement made in connection with this application, unless and until this application shall be expressly approved for reinstatement by the proper officers of the Company at its Home Office in Chattanooga, Tennessee, by appropriate signature endorsed hereon, during my continuance in good health; that upon such approval and payment of the full amount of the unpaid premiums and interest, and notification of approval sent me, and not until then, said policy shall be reinstated; and that if notice of the approval of this application is not mailed to me by the Company within thirty days from this date said application is to be considered declined.

"I further agree that the reinstatement of said policy upon this application shall not be taken as a precedent of similar action on the part of the Company. Dated at Chattanooga, Tennessee this 8th day of January, 1930."

On the same day, January 8, 1931, Jackson filed this application with Rhodes & Sloan. On that night about ten o'clock Mrs. Jones died, and very shortly thereafter Jackson was informed of her death. The next morning, the 9th of January, Jackson went to the office of Rhodes & Sloan, in which he had his office, and asked them if Mrs. Jones' application for reinstatement had been forwarded to appellant. He was informed that it had been

sent a few minutes before by a messenger boy. Appellant was at once informed by telephone, from the office of Rhodes & Sloan of Mrs. Jones' death. When this telephone message was received by appellant, it had in its possession the application for reinstatement. On the same day appellant's medical examiner entered a notation on the application refusing it.

Jackson testified that the giving of the twelve dollars and eighty-five cent check and the execution of the thirty dollar note by Mrs. Jones were mere steps in their plan to have the policy reinstated, and, in order to complete reinstatement, it was necessary that she sign the application, and that it be approved by appellant, and that she so understood.

The evidence showed, without dispute, that at the time of Mrs. Jones' death appellant had received no part of the proceeds of either the check or the note, but that the check had been cashed by Rhodes & Sloan, and the proceeds held in suspense awaiting the result of the application. So far as the note is concerned, the evidence left it uncertain as to whether it had been actually paid to Jackson. His receipt, however, indicated that it had been paid to him on the day Mrs. Jones signed the application and died. The evidence failed to show that the taking of the check and note by Jackson, and their collection, if both were collected, was done with the knowledge and consent of appellant; and, furthermore, there was no evidence tending to show a course of dealing between appellant and its agents, Rhodes & Sloan, and Jackson authorizing the continuance of its policies in force in that manner. On the contrary, the policy here involved contained these provisions:

"In the event of the prior death of the insured, the Company will pay said sum, at the Company's Home Office in Chattanooga, Tennessee, subject to all the conditions and provisions hereof, upon receipt and approval

of due proof of the death of the Insured, while this Policy is in force. . . .

"All the benefits, privileges and provisions printed and written on the following pages hereof are hereby made a part of this contract. . . .

"If this Policy be lapsed for nonpayment of premium it may at any time, on written application therefor by the Insured, be reinstated upon the following conditions: that Insured shall submit evidence in writing, which shall show in the opinion of the Company's Medical Director that according to the Company's theory of selection of risks the Insured is an acceptable risk; that said policy shall not be considered as reinstated unless and until notice to that effect is given to the Insured by the Company in writing during the continuance in good health of the Insured. . . .

"All premiums are payable on or before the date due, at the Home Office of the Company or to an Agent of the Company upon delivery of a receipt signed by the President, a Vice-President, Secretary, Assistant Secretary or Actuary of the Company, and countersigned by said Agent; notice of every premium due or to become due hereon is given and accepted by the delivery and acceptance of this Policy. The premium is always considered as payable annually in advance, but by agreement in writing and not otherwise may be made payable in semiannual or quarterly installments. Any unpaid premium or installment thereof required to complete the payment for the current policy year in which death occurs shall be deducted from the amount payable hereunder. The payment of a premium shall not maintain this Policy in force beyond the date when the next payment is due, except as herein provided. . . .

"No condition, privilege nor provision of this policy can be waived or modified in any case except by an endorsement hereon signed by the President, a Vice-President, Secretary, Assistant Secretary or Actuary. No

Agent has power on behalf of the Company to in anywise modify this contract of insurance to extend the time for paying a premium, to waive any forfeiture, or to bind the Company by making any promise or representation.

. . .

"This Policy is free from restrictions as to occupation, residence, travel, military or naval service,. and shall be incontestable after one year from the date hereof, except for the nonpayment of premiums, and except as to provisions and conditions, if any, relating to either Total and Permanent Disability Benefits or Double Indemnity Benefits."

As above stated, appellant and all the other persons concerned in this insurance, from the time it was effected until the death of Mrs. Jones, resided and carried on their business in the state of Tennessee. The contract was made in that state. Under the law, the substantive rights of the parties to this cause are governed by the laws of that state and not by the laws of Mississippi. Ætna Ins. Co. v. Mount, 90 Miss. 642, 44 So. 162, 45 So. 835, 15 L. R. A. (N. S.) 471; 32 C. J., sections 5, 7, 8, pp. 977-979. The procedure, however, including the remedies and rules of evidence, is governed by the law of the forum. Under these principles, the contruction of the contract of insurance in this case is governed by the law of Tennessee, where the common law prevails as well as in this state, except where modified by statute; the procedure is governed by the law of this state.

Section 5196, Code 1930, is not a mere procedure statute, not a mere rule of evidence, but creates a substantive right. The statute is in derogation of the common law; it makes the proof of the facts therein enumerated conclusive, not prima facie, evidence of agency for the insurance company. This is a new right, unknown to the law of insurance. The statute, therefore, has no application to this case. We know of no statute of Tennessee having any bearing on this case. So far as we are in-

formed, the applicable principles of the common law as interpreted by the courts of Tennessee are the same as those declared by our court. The presumption is that they are the same, unless the contrary be shown, and it is not shown in this case.

New York Life Insurance Company v. O'Dom, 100 Miss. 219, 56 So. 379, 383, Ann. Cas. 1914A, 583, was decided alone upon the principles of the common law. In that case the life insurance policy required the premiums to be paid on or before a fixed date, except as to the thirty days of grace, and that the payment of a premium should not continue the policy in force beyond the date when the next premium was payable, that no agent was authorized to waive forfeiture, modify contracts, or extend the time for the payment of a premium, and that only certain named officers had power to make or modify any contract of insurance, or extend the time of paying premiums, or to waive forfeiture, or bind the company. The court held that a cashier of the company, who was only authorized to send out notices and deliver official receipts for premiums, had no authority to extend the time of payment of premiums beyond the days of grace, or to receive a customer's premium after the policy had lapsed; that agency for an insurance company might be implied as in the case of natural persons, but the burden of proof was on the party seeking to establish the agency; that it was permissible for an insurance company to stipulate in its contract of insurance that the provisions of the contract could not be varied by any notice or representation not brought home to the actual knowledge of one of the principal officers of the company; that a provision in an insurance policy that no agent had power to modify the terms of the contract, or waive its conditions, was notice to the insured of the limit of authority of the agent in those respects, and under such a stipulation the insured could not rely upon any conduct of an agent as constituting a modification or waiver.

In that case the court reviewed numerous authorities in other jurisdictions, among them Tennessee. With reference to the James Case, 148 Mo. 1, 49 S. W. 978, and the Fallow Case, 110 Tenn. 720, 77 S. W. 937, the court said: "After a thorough examination of the authorities, we have been unable to find any case, except the James Case, . . . and the Fallow Case, . . . which holds that an agent, having simply the authority to collect premiums, had the power to waive forfeitures, where the policy, as in this case, provides that 'no agent is authorized to waive forfeitures, or to make, modify, or discharge contracts, or to extend the time for paying a premium.' But even in the James Case and Fallow Case, supra, it will be seen that in both of these cases the course of business and the custom had been such as to justify the parties in believing that the agent had the authority to extend the time of payment. Such had been done before and the acts of the agent ratified by the company. But if we be mistaken as to the ruling in Fallow's Case, .. . . this case is squarely overruled in Archer v. N. Y. L. Ins. Co., MS. opinion, delivered November, 1910, assenting to Crook v. Insurance Co., 112 Md. 268, 75 A. 388."

As we understand the O'Dom Case, the Jackson branch office of the New York Life Insurance Company occupied substantially the same relation to that company as Rhodes & Sloan did to appellant.

There is no merit in appellee's contention that Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217, is decisive of this case in her favor. That was a very different case from this—in fact, radically different. In that case the insured and the bank, in trying to keep the policy alive, dealt directly with the home office of the insurance company—with its executive officers, not with an outside agent. It is true that Davis was an outside agent, but, in addition, he was a stockholder and director of the company, and there was evidence that he had authority

to collect renewal premiums by check and give receipts therefor in the name of his principal. In the present case no one dealt with appellant, and there was no evidence to support the action of Jackson and Rhodes & Sloan in attempting to bind appellant, if they did attempt to do so.

We hold, therefore, solving the questions involved according to the common law, which, as stated, is presumed to be the same in Tennessee as it is in Mississippi, that the acceptance of the twelve dollars and eighty-five cents check and the thirty dollar note for the unpaid premium by Jackson and his principal, Rhodes & Sloan, conceding that the latter participated in the transaction, was not binding upon appellant, unless and until the insured's application for reinstatement had been approved by appellant; and we so hold because such action on the part of Jackson and his principal was neither expressly authorized by appellant nor by implication from a like course of dealing theretofore shown to have been in existence. The result is that appellant was entitled to a directed verdict instead of appellee.

Reversed, and judgment here for appellant.