MODERN INDUSTRIAL BANK, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. WILLIAM L. TAUB AND ISIDOR OSTROFF, SEVERALLY AND JOINTLY, DEFENDANTS-APPELLANTS.

Argued February 6, 1946—Decided April 25, 1946.

For the appellants, *Irvin M. Lichtenstein.*

For the respondent and cross-appellant, *Altman & Backer*
(*Samuel Backer* and *Emerson L. Richards,* of counsel).

The opinion of the court was delivered by

HEHER, J. The action is upon a promissory note made by
defendant Taub to the order of Riker & Company, Inc., and
indorsed by Taub and the defendant Ostroff. The answer
introduced by Taub and Ostroff was struck out as either sham
or frivolous; and there was summary judgment for plaintiff.
The Supreme Court affirmed the judgment against Ostroff,
but reversed as to Taub and directed the issuance of a *venire
de novo.* While the appeal was taken in the names of both
defendants, they attack only the judgment against Ostroff.
Plaintiff's cross-appeal challenges the Supreme Court's re-
versal of the judgment against Taub.

The note in suit evidences the maker's promise to pay the
payee, a real estate broker not licensed as such under *R. S.*
45:15–1, *et seq.,* a commission for negotiating a sale of the
Strand Hotel property in Atlantic City; and the primary
question at issue is whether the note is void and therefore
unenforceable against either the maker or the indorsers, even
in the hands of a holder in due course. The contention is
also made that both indorsements were affixed after the de-
livery of the instrument to the payee broker, and without a

new, independent consideration, and no contractual liability could thereby arise.

If the note has the qualities of a negotiable instrument, there can be no doubt that plaintiff is a holder in due course, and there is no issue of fact in that regard. The contention *contra* is sham. There is no competent testimony tending to overcome plaintiff's specific proof in that behalf.

Turning to the basic question, the insistence is that the note is void *ab initio,* in that it stems from "a transaction prohibited by statute and contrary to public policy," and, by the same token, is a non-negotiable instrument, and plaintiff is not a holder in due course entitled to the protection accorded such by the Negotiable Instruments Act, *R. S.* 7:2–1, *et seq.* The cases of *Kenney* v. *Paterson Milk and Cream Co.,* 110 *N. J. L.* 141, and *Fisher* v. *Brehm,* 100 *Id.* 341, are cited in support of these propositions.

But the subject-matter of *Fisher* v. *Brehm* was a check given in payment of a gambling debt; and it was held void, and therefore unenforceable by a holder in due course, under the express provision of section 3 of the Gaming Act of 1877 (*Comp. Stat.* 1910, *p.* 2623; now *R. S.* 2:57–3) that all such contracts "shall be utterly void and of no effect." The Real Estate Brokers Licensing Act, *supra,* is not so framed. It prohibits engagement in such brokerage business without the license therein provided; and its sanctions consist solely of pecuniary penalties recoverable by the commission therein created in the several District Courts and Courts of Common Pleas, with imprisonment for a period not exceeding thirty days as the alternative if there be default in payment of a judgment therefor.

The question is one of legislative intention. The particular statute is to be construed in the light of the provisions of sections 55, 57 and 59 of the Negotiable Instruments Act (*R. S.* 7:2–55; 7:2–57, 7:2–59) that the "title" of a person who "negotiates an instrument is defective" within the intendment of the act "when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an *illegal consideration,* or when

he negotiates it in breach of faith, or under such circumstances as amount to a fraud," but that a holder in due course holds the instrument "free from *any defect of title of prior parties,* and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon;" and that every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course, except as to a party who became bound on the instrument prior to the acquisition of such defective title. This policy of protection of the holder in due course is outstanding and fundamental in a statute designed to make for substantial uniformity in the laws governing commercial paper; and we are of the view that a purpose to modify that policy as regards an instrument of this class given to an unlicensed real estate broker for services rendered in violation of the licensing statute should be expressed in clear and explicit terms. Negotiable bills and notes are contrived to circulate as substitutes for money, as a medium of exchange, without the burden of inquiry; and the statutory rights of a holder in due course are of the very essence of this policy. The integrity of commercial paper should not be left to implication and the attendant uncertainty.

A statute must be construed with reference to the entire system of which it forms a part. Statutes *in pari materia* are construed as one act, and the whole harmonized, if possible; and statutes upon cognate subjects may be considered in arriving at the legislative intention, though not strictly *in pari materia.* This principle is essential to give unity to the laws, and to connect them in a symmetrical system. Implied repealers are not favored in the law. When there is no express repeal, none is presumed to have been intended; and the effect of a new statute upon a long established statutory policy is always in view. If the expression is susceptible of two meanings, that will be adopted which comports with the

general public policy of the State, as manifested by its legislation, rather than that which runs counter to such policy. It is to be presumed that the lawmaking body did not intend to disregard or modify a long-settled statutory policy, unless the purpose so to do is declared in certain and unequivocal terms. *Lewis' Sutherland Statutory Construction* (2d ed.), §§ 267, 443, 447, 448, 487, 516, 581.

We come now to the application of these principles.

Under the cited sections of the Negotiable Instruments Act, the inquiry is whether the particular instrument is utterly void *ab initio* or the consideration is illegal or contrary to public policy or the note is the fruit of an illegal transaction. If void, it is non-negotiable, and the Negotiable Instruments Act has no application; if the instrument is grounded in an illegal transaction, or the consideration is illegal or against public policy, the title of the holder in due course is unimpeachable, and he is not subject to the defenses open to prior parties *inter se*. It is the general rule that mere illegality or contravention of public policy does not void a negotiable instrument unless the statute so ordains in unambiguous language. If the statute does not, in terms, declare the instrument void, or render it unenforceable in the hands of a holder in due course, the rule of the Negotiable Instruments Act applies in all its vigor. Statutes will not be read as rendering such instruments void and unenforceable by a holder in due course unless that intention indubitably appears. Such is the general course of authority; and, if the Uniform Negotiable Instruments Act is to serve its purpose, the harmonious current of interpretation and application elsewhere cannot be disregarded here. These are the typical cases in other jurisdictions: *First National Bank* v. *Combs,* 237 *Ky.* 834; 36 *S. W. Rep.* (2d) 644; *Finseth* v. *Scherer,* 138 *Minn.* 355; 165 *N. W. Rep.* 124; *Ward* v. *Sugg,* 113 *N. C.* 489; 18 *S. E. Rep.* 717; *Lynchburg National Bank* v. *Scott Bros.,* 91 *Va.* 652; 22 *S. E. Rep.* 487; *Citizens' State Bank* v. *Nore,* 67 *Neb.* 69; 93 *N. W. Rep.* 160; *Sakon* v. *Santini,* 257 *Mich.* 91; 241 *N. W. Rep.* 160; *Gray* v. *Boyle,* 55 *Wash.* 578; 104 *Pac. Rep.* 828; *Farmers' National Bank* v. *Sutton Manufacturing*

Co., 52 Fed. Rep. 191; State Bank v. Lawrence, 177 Ind.
515; 96 N. E. Rep. 947; Cowing v. Altman, 71 N. Y. 435;
Hughes Brothers Manufacturing Co. v. Cicero Trust and
Savings Bank, 24 Fed. Rep. (2d) 199; Farmers' State Bank
of Texhoma v. Clayton National Bank, 31 N. M. 344; 245
Pac. Rep. 543; 46 A. L. R. 952; Allen v. Grenada Bank,
155 Miss. 91; 124 So. Rep. 69. See, also, 5 U. L. A., § 57,
note 32.

Here, the particular licensing statute, unlike the Gaming
Act, merely subjects the unlicensed practitioner to a prescribed
pecuniary penalty. It does not render void and unenforce-
able as to a holder in due course negotiable commercial paper
growing out of such engagements; and the marked difference
in treatment is significant of the legislative intention. For
the distinction between a "void" and an "illegal" contract,
see John J. Carlin, Inc., v. O'Connor, 126 N. J. L. 243.

The case of Kenney v. Paterson Milk and Cream Co., supra,
is not in point. That was a suit between the immediate parties
to an illegal contract for the services of an unlicensed broker.
And the case of Gionti v. Crown Motor Freight Co., 128
N. J. L. 407, is in the same category.

And there is no substance whatever to the point that the
indorsements were made after the delivery of the note. The
indorsement of a promissory note, even though anomalous
or irregular, prima facie signifies a supporting consideration;
and the burden rests upon the defendant to plead and prove
the want of consideration. This defense was not pleaded
here; and, moreover, the affidavits submitted on the motion
for summary judgment reveal that it is sham. The indorse-
ments were given on the day of the date of the note. The
payee had asked for a mortgage security and, when it was
not forthcoming, the indorsements were accepted in lieu
thereof. The instrument was then delivered. The requisite
intention to render it effectual did not come into being until
the indorsements had been affixed. The argument contra
rests upon the premise, asserted as a fact in defendants' affi-
davits, that the payee was in actual possession of the note
when they indorsed it. But physical possession of such an

instrument is not, without more, determinative of the issue of delivery. Delivery is essentially a question of intention. The intention to deliver, and thus to assume the obligation of the contract expressed in the writing, is of the essence of delivery in legal intentment. Section 16 of the Negotiable Instruments Act (*R. S.* 7:2–16) so provides; and in this respect the act is merely declaratory of the law merchant. The transfer of possession may be either actual or constructive (*R. S.* 7:1–2); the intention (*vel non*) to transfer the property in the instrument determines the quality and the legal consequences of the act. The character of the possession depends upon the will of the parties; the intention is the life and spirit and the measure of the thing transferred. The delivery may be conditional; and it becomes absolute and gives rise to an enforceable obligation only when the condition precedent is fulfilled, although a valid delivery by all prior parties is conclusively presumed in favor of a holder in due course.

We therefore have no occasion to consider the question of whether this defense, if factually well-grounded, would be available against a holder in due course. See, as to this, sections 17, 63, 64, 66 of the Negotiable Instruments Act (*R. S.* 7:2–17, 7:2–63, 7:2–64, 7:2–66; *Morris County Brick Co.* v. *Austin,* 79 *N. J. L.* 273; *Wilson* v. *Hendee,* 74 *Id.* 640; and the annotations in Brannan's Negotiable Instruments Law, §§ 17, 63, 64, 66; 5 *U. L. A.,* §§ 17, 63, 64, 66; 10 *C. J. S.* 469, and 8 *Am. Jur.* 61, 257.

The judgment against Ostroff is affirmed, and the judgment of the Supreme Court reversing the judgment against Taub is reversed, and the judgment of the Common Pleas is affirmed.

On the appeal of Isidor Ostroff—

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, PERSKIE, COLIE, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, JJ. 12.

*For reversal*—None.

On the appeal of Modern Industrial Bank—

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, PERSKIE, COLIE, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, JJ.   12.