AGRISTOR CREDIT CORPORATION, Plaintiff,

v.

Dee LEWELLEN and Delores Lewellen, Defendants.

No. WC 77–52–K.

United States District Court, N. D. Mississippi, W. D.

June 15, 1979.

**48**

Richard T. Bennett, Craig M. Geno, McDavid, Edmonson, Bennett, Lotterhos & Sulser, Jackson, Miss., for plaintiff.

C. D. Thomas, Pontotoc, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

AgriStor Credit Corporation (AgriStor), a Delaware corporation, has invoked the court's diversity jurisdiction under 28 U.S.C. § 1332 against defendants Dee Lewellen and Delores Lewellen, citizens of Mississippi, to enforce its claims that defendants breached two retail installment contracts assigned to AgriStor. Plaintiff has moved the court pursuant to Rule 56, F.R. Civ.P., for summary judgment in its favor, asserting that there is no genuine issue as to any material fact, and AgriStor is therefore entitled to judgment as a matter of law. It is undisputed that Mississippi law governs disposition of the motion.

The following relevant facts have been stipulated. On July 15, 1975, defendants jointly and severally executed a retail installment contract with Mid-South Harvestore, Inc. (Mid-South), under which defendants agreed to purchase a certain animal feeding system and equipment. On the same day, Mid-South assigned for value all of its right, title and interest in the above contract to the plaintiff AgriStor. On August 4, 1975, the defendants jointly and severally executed a second retail installment contract with Mid-South under which they agreed to purchase an additional animal feeding system and equipment. Again, Mid-South assigned all its right, title and interest in this second contract to AgriStor on the same day of its execution by defend-

ants. Defendants have made no payments to AgriStor on either of the above contracts since January 28, 1977, thus defaulting on both obligations.

After its seizure and sale of the equipment at public auction, plaintiff now seeks deficiency judgment of $37,766.65 plus finance charges at the rate of $12.0068 per day from April 12, 1979, and attorney fees, legal expenses and court costs. Defendants in turn assert that plaintiff purchased the two contracts subject to all warranties and representations made to defendants by Mid-South. In addition, defendants have counterclaimed against plaintiff on the ground that the annual percentage finance charges on the two contracts are usurious under Miss.Code Ann. § 75–17–1 (Supp.1978), and defendants are therefore entitled to judgment in the amount paid by them to plaintiff under the forfeiture provisions of § 75–17–1.

As noted above, AgriStor is the assignee of both contracts here involved. As such, AgriStor argues that it is a holder in due course against whom defendants' claims or defenses may not be raised.[1] The parties have stipulated that AgriStor acquired the contracts from Mid-South "for value," and defendants have not alleged that the assignment of the contracts was not undertaken in good faith by either Mid-South or AgriStor. Although defendants have alleged that AgriStor purchased the contracts "subject to all warranties and conditions" made to them by Mid-South, the record is barren of evidence of any such obligation on the part of AgriStor. Indeed, the installment contracts themselves, which defendants admittedly signed without reservation, clearly specify in Clause 14 of each contract that Mid-South intended to assign the contracts to AgriStor, that defendants consented to the assignment, and that Mid-South was to remain solely responsible for any warranties made by it at the time of sale of the equipment:

> (b) in good faith; and
> (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

---

1. § 75 3 -302 (1972) provides in relevant part:
   (1) A holder in due course is a holder who takes the instrument
      (a) for value; and

Seller intends to assign this contract to the assignee named on the face hereof [AgriStor]. Buyer hereby consents to such assignment and to the extent permitted under the Governing Law agrees not to assert against said assignee any claim or defense which he may have against Seller or Manufacturer; . . . Notwithstanding any assignment of this contract by Seller, Seller or Manufacturer shall continue to be responsible for the performance of the collateral in accordance with any and all guarantees and warranties made by them; and Buyer will make or settle any and all claims in regard thereto directly and exclusively against or with Seller or Manufacturer.

■■ Such an agreement by the Lewellens not to assert against an assignee any claim or defense which they might have against Mid-South as seller is clearly sanctioned in Mississippi. Miss.Code Ann. § 75–9–206(1) (1972).[2] The Lewellens contend, however, that § 75–9–206(2)[3] should apply instead, urging that Mid-South retained a security interest in the goods sold, making § 75–9–206(1) inapplicable. Both contracts clearly state that the buyers, the defendants, grant to the seller, Mid-South, a security interest in the equipment sold. Equally as clear, however, are the assignment provisions on both contracts wherein Mid-South assigns to AgriStor *"all* of its right, title and interest in and to the above contract and in and to the property sold thereunder." (emphasis added). No other words or phraseology could make clearer that Mid-South intended to and did assign any security interest in the property granted to it by the Lewellens and, therefore, cannot be said to have "retain[ed] a purchase money security interest in the goods" within the meaning of § 75–9–206(2).

■ Defendants also contend that AgriStor cannot be deemed a holder in due course as defined by § 75–3–302, *supra,* since at the time of assignment the goods had been neither delivered nor installed, making impossible the assertion by defendants of any claim or defense, *i. e.,* breach of warranty. Section 75–3–302 contains no requirements as to the time which must elapse before an assignee may be considered a holder in due course. It merely requires that the assignment be undertaken for value, in good faith and without notice of claims or defenses by the buyer. Accordingly, this argument by defendants must also fail. The court is convinced that the terms of the contracts clearly, unambiguously and within the letter of Mississippi substantive law, confer upon AgriStor the status of a holder in due course. Defendants' remedies for breach of any express or implied warranties lie only against the seller, Mid-South, who is not a party to this suit. *See Salitan v. Ford,* 231 Miss. 616, 97 So.2d 232 (1957).

■ As to defendants' counterclaim for $13,274.73, the amount paid by defendants to AgriStor, on the ground that § 75–17–1 requires forfeiture of all principal and interest paid on a usurious contract, it has long been the law in Mississippi that the defense or claim of usury may not be asserted against one who is found to be a holder in due course. *Guaranty Inv. & Loan Co. v. Stevens,* 161 Miss. 473, 137 So. 335 (1931); *Allen v. Grenada Bank,* 155 Miss. 91, 124 So. 69 (1929). We agree with plaintiff that Mississippi's adoption of the Uniform Commercial Code did not alter this rule of law and that the official comment to § 3–305 of the U.C.C. (Miss.Code Ann. § 75–3–305 (1972)) makes clear that usury may not be asserted against a holder unless

**2.** (1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the chapter on Commercial Paper (Chapter 3). A buyer who as part of one (1) transaction signs both a negotiable instrument and a security agreement makes such an agreement.

**3.** (2) When a seller retains a purchase money security interest in goods the chapter on Sales (Chapter 2) governs the sale and any disclaimer, limitation or modification of the seller's warranties.

the state usury statute provides that the existence of usury voids and nullifies the entire obligation. Section 75–17–1 provides only for forfeiture by the lender of interest or interest and principal; the statute does not make the obligation entirely null and void, but merely voidable. *See Chandlee v. Tharp,* 161 Miss. 623, 137 So. 540, 542–43 (1931); *Allen, supra* at 71.

■ Even if usury could be asserted against AgriStor in this case, we hold that the time-price doctrine takes the transactions here challenged outside the usury statute. The doctrine, long recognized in Mississippi, *see, e. g., Mullins v. Merchandise Sales Co.,* 192 So.2d 700, 704 (Miss. 1966); *Bryant v. Securities Inv. Co.,* 233 Miss. 740, 102 So.2d 701 (1958); *Yeager v. Ainsworth,* 202 Miss. 747, 32 So.2d 548 (1947); *Bass v. Patterson,* 68 Miss. 310, 8 So. 849 (1891), has been aptly explained as follows:

A seller of merchandise may quote to the buyer a bona fide cash price and a greater time price. If the buyer accepts the time price, there is no usury involved even though the differential between the cash price and the greater time price exceeds the maximum amount of interest which could lawfully be collected.

Robertson, *Myth and Reality in Consumer Credit Rate Regulation,* 43 Miss.L.J. 429, 437 (1972). Thus, the doctrine has been described as "the major loophole" in Mississippi's usury statute. *Id.*

All of the above authorities preceded the amendment of § 75–17–1, which became effective in 1974, and defendants contend that the legislature intended by the amendment to eliminate the time-price doctrine and bring contracts, such as the installment contracts in this case, within the purview of § 75–17–1. We disagree. We note first that the statute provides that

(1) The legal rate of interest on all notes, accounts and contracts shall be six percent (6%) per annum, calculated according to the actuarial method, *but contracts may be made, in writing, for payment of a finance charge as otherwise provided by this section or as otherwise authorized by law.* (emphasis added).

Furthermore, the statute goes on to define the term "finance charge" as

the amount or rate paid or payable, directly or indirectly, by a debtor for receiving a loan or incident to or as a condition of the extension of credit, including but not limited to interest, brokerage fees, finance charges, loan fees, discount, points, service charges, transaction charges, activity charges, carrying charges, finders fees or any other cost or expense to the debtor for services rendered or to be rendered to the debtor in making, arranging or negotiating a loan of money or an extension of credit and for the accounting, guaranteeing, endorsing, collecting and other actual services rendered by the lender; . . .

§ 75–17–1(9) (Supp.1978).

■ Although there has never been a statutory provision allowing utilization of the time-price doctrine in Mississippi, we are of the opinion that the doctrine is solidly embedded within the substantive common law of Mississippi, described as follows:

[T]he common law consists of those principles and rules of action which have been from time to time adopted and acted upon by the courts when administering justice in cases not governed by any written law, arising out of the private disputes of individuals.

*Yazoo & M. V. R. R. v. Scott,* 108 Miss. 871, 67 So. 491, 492 (1915). And, in line with the principle that implied repeals of statutes are not favored in this state, *see Harris v. Harrison County Bd. of Supervisors,* 366 So.2d 651 (Miss.1979), so the common law prevails in Mississippi except where modified by statute. *Interstate Life & Accident Co. v. Pannell,* 169 Miss. 50, 152 So. 635, 638 (1934).

■ In light of the foregoing guidelines, we find it difficult to believe that the legislature, which must have had knowledge of such a firm tradition in Mississippi finance law as the time-price doctrine, intended, with specific terms which never actually address the precise issue of abolishing the doctrine, to obliterate the time-price doctrine from Mississippi jurisprudence. If the lawmakers of this state had intended to do

so, they surely would have used plain language to achieve such an effect. We therefore hold, as we believe the Mississippi Supreme Court would, that the 1974 amendment to § 75–17–1 did not modify the viability of the time-price doctrine in this state.

For the foregoing reasons we find that the motion of plaintiff AgriStor Credit Corporation for summary judgment on both its claims against defendants Dee Lewellen and Delores Lewellen and defendants' counterclaim against plaintiff is well taken.

Let judgment be entered for plaintiff in the sum of $37,766.65, plus 8% interest per annum from date of sale until paid, together with reasonable attorney fees and costs. Counsel for plaintiff has submitted an affidavit making claim of attorney fees of $7,391.50 based upon an hourly rate of $50 for the time expended by Richard T. Bennett and $40 per hour for the time expended by Craig M. Geno. The court finds that these rates exceed the customary attorney fees allowable for collection on a note, which normally are assessed at 15% where litigation has not proceeded past summary judgment. Accordingly, the court determines that a reasonable attorney fee in this case is 15% of the principal and accrued interest.